GLOVER v McRIPLEY

Docket No. 88555. Submitted December 9, 1986, at Detroit. Decided April 7, 1987.

Norman and Lorraine Glover are the maternal grandparents of Marlena McRipley. Norma Jean McRipley and Gil McRipley, Marlena's parents, were divorced and custody was given to Norma Jean. In 1980, Norma Jean was murdered and Norman and Lorraine Glover petitioned the Wayne Circuit Court for custody, which was granted. In 1984, Gil McRipley petitioned for a change of custody. A hearing was held before a referee and a recommendation was made. Objections were filed and the case was set for de novo review by the trial judge. The parties stipulated that the basis for review would be the evidentiary record made before the referee and an in camera interview with Marlena. The court, Richard L. Kaufman, J., denied the petition for change of custody. Gil McRipley appealed.

The Court of Appeals *held:*

1. The trial court's findings were not against the great weight of the evidence.

2. The trial court did not err in failing to discuss in its opinion all of the evidence of record.

3. The burden of proof in a child custody case where both the parental presumption and the established custodial environment presumption of the Child Custody Act are applicable and preponderate in opposite directions evolves into a preponderance of the evidence. In such a case the burden of persuasion rests with the parent challenging the established custodial environment in the home of a third party. The trial court applied the correct burdens of proof and persuasion.

Affirmed.

REFERENCES

Am Jur 2d, Appeal and Error §§ 703, 772.

Am Jur 2d, Parent and Child §§ 27, 43.

Award of custody of child where contest is between child's father and grandparent. 25 ALR3d 7.

Right to custody of child as affected by death of custodian appointed by divorce decree. 39 ALR2d 258.

1. APPEAL — CHILD CUSTODY.
   Child custody cases are considered de novo by the Court of Appeals and the evidence is examined apart from the trial court's findings of fact, but review is limited by the section of the Child Custody Act which requires all orders and judgments of the circuit court to be affirmed on appeal unless the court made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY — EVIDENCE.
   A trial court does not err in failing to discuss all of the evidence of record in its opinion in a child custody case.

3. PARENT AND CHILD — CHILD CUSTODY — PRESUMPTIONS — CHILD CUSTODY ACT.
   The burden of proof in a child custody ᵢcase where both the parental presumption and the established custodial environment presumption of the Child Custody Act are applicable and preponderate in opposite directions evolves into a preponderance of the evidence; in such a case the burden of persuasion rests with the parent challenging the established custodial environment in the home of a third party.

*Ronald L. Stone,* for plaintiff.

Gil Whitney McRipley, in propria persona.

Before: WAHLS, P.J., and R. M. MAHER and D. J. SHIPMAN,* JJ.

R. M. MAHER, J. Defendant appeals as of right from the October 15, 1985, order of the Wayne Circuit Court denying his petition for a change of custody as to the minor child, Marlena McRipley.

Plaintiffs in this case, Norman and Lorraine Glover, are the maternal grandparents of the minor child.

Married in February of 1977, defendant and Norma Jean McRipley (Glover) were separated in August of 1977. At that time, Norma Jean was

* Circuit judge, sitting on the Court of Appeals by assignment.

pregnant and went to live with her parents, plaintiffs to this action. Marlena, the minor child, was born on September 6, 1977. Thereafter, Norma Jean continued to reside with her parents.

In November of 1978, defendant and Norma Jean McRipley were divorced. Custody of the minor child was awarded to the mother, Norma Jean, in the judgment of divorce. Defendant was awarded visitation rights.

On February 8, 1980, Norma Jean was murdered and Marlena remained in the custody of her grandparents. Defendant petitioned the Oakland Circuit Court for custody of Marlena and, on March 12, 1980, obtained an ex parte order for custody in the Oakland County divorce action. Meanwhile, plaintiffs had petitioned Wayne Circuit Court for custody as well. On May 30, 1980, the parties entered into a consent agreement permitting plaintiffs to retain custody and granting defendant visitation rights. At that time, defendant was a student at Thomas M. Cooley Law School in Lansing, Michigan.

In May of 1981, defendant filed a motion for change of custody, alleging that he had entered into the consent agreement because of improper advice from his attorney. After hearing the arguments, the circuit court ordered that plaintiffs have custody of Marlena until she attained eighteen years of age or until further order of the court. The court reserved for defendant an absolute right to petition the court at a later time for a rehearing on the custody issue.

Defendant then filed another petition for change of custody in August of 1984. Pursuant to that petition, an evidentiary hearing was held before a circuit court referee. It was the referee's recommendation that custody be awarded to defendant. Plaintiffs filed an objection and the matter was

scheduled to be heard by the circuit court. Prior to the hearing, the parties stipulated through counsel that the court's decision would be based solely on the written transcript of the hearing held before the referee.

After reviewing the transcript conducting an extensive in camera interview with Marlena, the trial court ordered that, in the best interests of Marlena, custody should be retained by her grandparents. Defendant appeals from this order.

On appeal, defendant first argues that the trial court's award of custody to the plaintiffs must be reversed because it is against the great weight of the evidence. The trial court's findings in child custody cases are reviewed de novo by this Court. *DeGrow v DeGrow,* 112 Mich App 260, 265; 315 NW2d 915 (1982); *Arndt v Kasem,* 135 Mich App 252; 253 NW2d 497 (1984); *Wilkins v Wilkins,* 149 Mich App 779, 786; 386 NW2d 677 (1986). A reviewing court must appraise the evidence apart from the trial court's findings. *Arndt, supra; Wilkins, supra.* However, relief is ultimately limited by § 8 of the Child Custody Act, 1970 PA 91, which provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. [MCL 722.28; MSA 25.312(8).]

The act specifies ten factors for the trial court's consideration in child custody disputes and additionally allows the trial court to consider any other factor it deems to be relevant in a particular dispute. MCL 722.23; MSA 25.312(3). Defendant

challenges the trial court's findings on seven of the specified factors as against the great weight of the evidence.

The first factor specified in the act is:

> The love, affection, and other emotional ties existing between the parties involved and the child. [MCL 722.23(a); MSA 25.312(3)(a).]

The trial court held:

> From the evidence presented, and the lengthy interview conducted by the Court with the minor child, it is obvious to the Court that Marlena has established strong, loving bonds with her grandparents. Furthermore, her life style with them is the major source of security for her at this time in her life. While there is evidence that loving bonds do exist between Marlena and her father, there is no evidence that this bonding is remotely close to that which exists between Marlena and her maternal grandparents. Consequently, this Court would have to hesitate before entering an order of custody that would jeopardize this strong and loving relationship between Marlena and her grandparents. Certainly, an award of custody to the defendant-father could occur under a situation that, given good will and co-operation, would allow the strong ties between Marlena and her grandparents to continue. The evidence, however, concerning the severely strained relations between the plaintiff and defendant cause this Court to believe that a change of custody to the defendant could, and would likely, seriously jeopardize the chances of a meaningful continuing relationship between the plaintiffs and Marlena.

Defendant argues that the trial court's finding in this regard places too much emphasis on the in camera interview with the minor child and fails to realize that it is difficult for defendant to improve

his emotional ties with his daughter while she is living in her grandparents' home. We disagree. The trial court was not only entitled to consider the minor child's testimony in this regard, but, given that it found Marlena to be bright and unusually mature, was actually required to do so. *Flaherty v Smith,* 87 Mich App 561; 274 NW2d 72 (1978); MCL 722.23(i); MSA 25.312(3)(i). Moreover, while it is true that the trial court did not consider defendant's difficulty as an absentee parent under this subsection, the trial court did give consideration to that factor under subsections (b) and (i). Since subsection (a) does not specifically require consideration of defendant's special problem, we decline to find any error. Finally, our review of the evidence does not lead us to conclude that the trial court's finding for the plaintiffs on factor (a) was against the great weight of the evidence. *Arndt, supra; Wilkins, supra.*

Defendant also challenges the trial court's finding on factor (b):

> The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any. [MCL 722.23(b); MSA 25.312(3)(b).]

In this regard, the trial court held:

> Although the defendant and the plaintiffs both seem anxious and willing to give love and guidance to the minor child, the defendant's educational background would seem to indicate a greater ability for continuing and enhancing Marlena's educational performance. With respect to love and affection, however, it appears that the plaintiffs along with the extended family Marlena has come to know, including aunts, uncles and cousins are in a better position to provide many

different forms of love and affection to Marlena. The interview with Marlena also confirmed the importance to her to continue to be a part of this extended family. Again, the strain evident between the plaintiffs and defendant might jeopardize Marlena's involvement with this extended family, if there was a change of custody to the defendant.

This Court is not unmindful of the fact that the defendant now has a new family with his new wife and their son. The Court also believes, that after some adjustment period if the defendant was granted custody of Marlena, a cohesive immediate family and possibly important extended family could develop. Nonetheless, the Court is convinced that the family group that Marlena knows at her grandparents presently has a greater ability, as a unit, to provide Marlena with many forms of love and affection.

With respect to the raising of the child in its religion or creed, the Court is persuaded that each party desires to provide Marlena with religious education, and that this part of this factor is not a significant differentiating one.

Defendant argues that the testimony in fact shows that Marlena feels lacking in maternal and paternal support in her current environment—the plaintiffs' home. However, our review of the record indicates that this passage from Susan Orbach's testimony is taken out of context. Orbach, a licensed psychologist, further explained that this sense of traumatic loss is rooted in Marlena's very early childhood and that, if moved from her grandparents' to her father's home, the sense of loss would actually increase. We believe that it is defendant who has ignored the complete testimony of the experts regarding factor (b). The trial court's finding in this regard is not against the great weight of the evidence. *Arndt, supra; Wilkins, supra.*

Defendant next challenges the trial court's finding in factor (c):

> The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs. [MCL 722.23(c); MSA 25.312(3)(c).]

The trial court held:

> Although each of the competing parties is financially responsible, this Court is persuaded that the grandparents are in a better position to provide food, clothing and medical care. Their employment history is long and stable, and they live in a home that they have owned for many years. The father, on the other hand, has chosen politics as a career. His position with Royal Oak Township could disappear at the next election. Although he has completed law school, the defendant is not licensed to practice law. Given the uncertainty of the father's career, and his slim employment record, it appears to this Court that the grandparents present income provides a significantly greater capacity to provide food, clothing and medical care for Marlena.

Defendant argues that the trial court erred in its consideration of factor (c) by placing extreme emphasis on economic factors. Mrs. Glover's annual salary of $27,000, combined with Mr. Glover's annual pension benefits of $9,600, does greatly exceed defendant's annual salary of $15,000 as Supervisor of Royal Oak Township. Moreover, defendant is now remarried, has one other child and is currently renting a house, while plaintiffs own their home and have no other children to support. Given that defendant's financial position is precar-

ious at best, we do not believe that the trial court placed any undue emphasis on this factor. Indeed, when the trial court's opinion is viewed as a whole, we are inclined to believe that it understated the significance of defendant's financial position. Finally, we find no error in the trial court's recognition that defendant has been unable to pass the bar exam subsequent to his graduation from law school in April of 1984. Should defendant succeed in passing the bar exam and should his financial circumstances improve thereafter, he is not foreclosed from again petitioning the circuit court. At this point, however, it would be speculative of the court to assume that defendant's financial circumstances are about to blossom. The trial court's finding in this regard is not against the great weight of the evidence. *Arndt, supra; Wilkins, supra.*

Defendant next challenges the trial court's finding as to factor (d):

> The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity. [MCL 722.23(d); MSA 25.312(3)(d).]

The trial court held:

> As previously indicated, the minor child has always lived with her grandparents. The evidence is persuasive that this is a happy nurturing environment. The psychologists who tested Marlena, and who testified at the hearing, indicated that, at this point in time, it would jeopardize Marlena's emotional well being to leave home. Consequently this testimony from the psychologist along with the length of time the child has lived in the same environment suggests that the present environment is satisfactory, and a move may jeopardize Marlena's emotional well being.

Defendant argues that the trial court's finding in this regard ignores expert testimony indicating that Marlena's best interest, in the long-term, is in establishing a true parent-child relationship with her father. We disagree. The trial court's findings clearly indicate that the desirability of maintaining a stable environment outweighs the desirability of establishing residence with the father at this time. Moreover, we believe that the trial court's finding in this regard is fully supported by the expert testimony, which suggests that the father-daughter relationship has not yet reached a point at which a change of custody is desirable. Thus, we do not hold that the trial court's findings on this factor are against the great weight of the evidence. *Arndt, supra; Wilkins, supra.*

Next defendant challenges the trial court's findings on factor (e):

> The permanence, as a family unit, of the existing or proposed custodial home or homes. [MCL 722.23(e); MSA 25.312(3)(e).]

The trial court held:

> The home of the defendant has changed a considerable number of times over the last four or five years. The defendant, however, seems to have begun to establish roots in Royal Oak Township with his new wife and child. Consequently, the defendant seems to be in the process of creating a permanent family unit.
>
> The plaintiffs' home on the other hand seems to have always been, and gives every reason to believe will continue to be, a permanent place for the family unit. The people living in this home have been consistent for a long period of time, and Marlena seems familiar and comfortable with that environment. Furthermore, Marlena's grandmother does, and always has, arranged her work

schedule around the care of Marlena. In addition, the grandfather is retired and available for child care duties. Marlena has toys and friends at this home as well as an established school situation.

Defendant argues that the trial court's finding in this regard is erroneous since the plaintiffs are advanced in years and that his, defendant's, home has always been in Royal Oak Township. We do not agree that Mr. and Mrs. Glover's ages, sixty and fifty-six years respectively, are so advanced as to inject an element of instability into their home. Furthermore, while defendant's home in the past was in Royal Oak Township and currently is in Royal Oak Township, he is only now reestablishing himself there after living and working in Lansing for several years. Plaintiffs have been married for thirty years, as opposed to defendant's fourteen months, and have continuously resided at their present address for twenty years. The trial court's findings regarding this factor are not clearly erroneous. *Arndt, supra; Wilkins, supra.*

Defendant next challenges the trial court's finding as to factor (g):

The mental and physical health of the parties involved. [MCL 722.23(g); MSA 25.312(3)(g).]

The trial court found:

The defendant gives every indication of being a young vigorous and physically and mentally healthy person. Similarly, there is no evidence in the record to suggest that the grandparents have any significant health problems. The Court is, however, mindful of the fact that the plaintiffs are a generation older than the defendant. Although this is not a great concern, the Court does harbor some reservations about this age difference. Nonetheless, from the age and health of the plaintiffs it

appears that they will be available for many years
to provide support and companionship to Marlena.
This factor does not seem extremely significant,
but does seem to favor the defendant.

Although the trial court found in favor of defendant on this factor, defendant argues that the trial
court failed to assign the appropriate weight to
this factor. We disagree. The record fully supports
the fact that both parties are in good health.
Defendant does not dispute this fact but, instead,
argues that the trial court failed to give appropriate consideration to the age of the plaintiffs. However, given that both parties are in good health
and given that a new petition may be filed by
defendant if and when the health of the plaintiffs
becomes a factor, we believe that the weight assigned by the trial court was more than generous
to defendant. The trial court's finding in this
regard was not clearly erroneous. *Arndt, supra;
Wilkins, supra.*

Finally, defendant challenges the trial court's
findings as to factor (i):

> The reasonable preference of the child, if the
> court deems the child to be of sufficient age to
> express preference. [MCL 722.23(i); MSA
> 25.312(3)(i).]

The trial court held:

> From the interview, Marlena appears to the
> Court to be a bright, sensitive and wonderful child.
> Marlena appeared to the Court to be unusually
> mature for her seven years of age. Although
> Marlena's age requires the Court to hesitate in
> giving too much weight to the interview, the Court
> is persuaded that it does merit consideration.
> Based on the interview that lasted approximately
> one hour and fifteen minutes the Court is per-

suaded that Marlena wishes to remain in the home of her grandparents.

In short, Marlena has established strong, loving bonds with her grandparents, and her lifestyle with them is the major source of security for her at this time in her life. Additionally, Marlena seems keenly aware of the communication problems that exist between her father and her grandparents and seems to fear that a change of custody to the defendant might jeopardize the relationship she has with her grandparents.

Again with this factor, defendant does not actually challenge the trial court's finding but, instead, argues that the trial court assigned too much weight to Marlena's preference. It is apparent to us that the trial court did not assign great weight to this factor and that the weight assigned was in accord with the trial court's findings as to Marlena's intelligence and maturity levels. The trial court's findings in this regard were not against the great weight of the evidence. *Arndt, supra; Wilkins, supra.*

In addition to challenging the trial court's findings of fact, defendant challenges the trial court's "selective" use of expert testimony. We believe that distillation of information is the very essence of fact-finding. Thus, to the extent that defendant challenges the failure of the trial court to include all of the evidence of record in its opinion, we find no error. Furthermore, defendant has neither alleged nor shown any pattern of selection on the part of the trial court which would constitute an abuse of discretion under MCL 722.28; MSA 25.312(8). See also *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959) (defining "abuse of discretion"). We therefore decline to reverse the trial court's holding because of its selective use of evidence.

Defendant's third and most substantial issue on appeal is that the trial court failed to properly apply the parental presumption contained in § 5 of the Child Custody Act:

> When the dispute is between the parents, between agencies or between third persons the best interests of the child shall control. *When the dispute is between the parent or parents and an agency or a third person, it is presumed that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.* [MCL 722.25; MSA 25.312(5). Emphasis added.]

This matter is complicated, however, by applicability of the established custodial environment presumption contained in § 7 of the act:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or another [sic] or judgment of the circuit court, for the best interests of the child the court may:
>
> *       *       *
>
> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. *The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.* The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclina-

tion of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27; MSA 25.312(7). Emphasis added.]

Here, it is undisputed that defendant is the natural father of Marlena and thus entitled to the parental presumption. However, it is equally clear that Marlena has resided with the plaintiff-grandparents since birth and, since the death of her mother five years prior to the hearing, has looked exclusively to the plaintiffs for guidance, discipline and the necessities of life on a day to day basis. Thus, the plaintiffs are entitled to a presumption in favor of the established custodial environment.

In resolving this statutory dilemma, the trial court turned to our decision in *Siwik v Siwik,* 89 Mich App 603; 280 NW2d 610 (1979). There we held

this apparent conflict has been resolved properly in *Stevens v Stevens,* 86 Mich App 258, 264-269; 273 NW2d 490 (1978), and *Bahr v Bahr,* 60 Mich App 354; 230 NW2d 430 (1975). In each of those cases, our Court concluded that the basic inquiry must be into the best interests of the child. Further, the presumptions in MCL 722.25 [MSA 25.312(5)] and MCL 722.27(c) [MSA 25.312(7)(c)] should be recognized equally, with the best interest of the child as the overriding concern, a concern sufficient to overcome any of the rebuttable presumptions in the statute. [*Siwik, supra,* p 608.]

In *Deel v Deel,* 113 Mich App 556; 317 NW2d 685 (1982), we followed *Siwik,* explaining further:

Both presumptions should be considered because both are concerned with the ultimate issue of the child's best interests. The statutory language and the decisions of this Court suggest, however, that the burden is on the third party to rebut the

presumption in favor of the natural parent. *Stevens* and *Bahr* were concerned with recognizing both presumptions because prior law had established that the parental presumption could only be overcome by a showing that the natural parent was unfit. See *Bahr v Bahr, supra,* p 359. Recognition of both presumptions does not, however, remove the third party's burden to show that custody in his or her favor is in the child's best interests. If the third party provides an established custodial environment this is an important factor to consider in determining whether the presumption in favor of the natural parent has been rebutted.

. . . The fact that both presumptions should be recognized does not mean that in every case where these presumptions collide they cancel each other out and can play no part in determining the best interests of the child. That determination must be made with the utmost care after determination of all relevant factors. This process is unwisely restricted if the trial court cannot consider the fact that one of the parties provides an established custodial environment simply because the other party is a natural parent, or vice versa. It is not error to weigh ultimately the facts underlying one presumption more heavily than those underlying the other so long as the circumstances dictate that such weight is appropriate and so long as the inquiry remains focused on the best interests of the child. [*Deel, supra,* p 562-563.]

Like the trial court, we believe that this analysis properly resolves the apparent conflict between §§ 5 and 7(c) of the act. We do acknowledge that our much earlier decision in *Baldwin v Baldwin,* 56 Mich App 489; 224 NW2d 116 (1974), appears to endorse an analysis in which the parental presumption prevails over the established custodial environment presumption. The reasoning of *Baldwin* is suspect in light of the fact that two of the judges of that panel no longer espouse the reason-

ing therein. See *Stevens v Stevens,* 86 Mich App 258, 267, n 3; 273 NW2d 490 (1978). *Bahr v Bahr,* 60 Mich App 354; 230 NW2d 430 (1975), also repudiated the *Baldwin* reasoning. *In re Maria S Weldon,* 397 Mich 225; 244 NW2d 827 (1976), a case in which five of the justices participated, suggests that three members of the Supreme Court support the reasoning of *Bahr.*

Further, we believe that *Baldwin* is distinguishable in that the trial court therein failed to give any consideration to the parental presumption. In the case before us, the lower court considered the parental presumption but properly found that it was rebutted on the May 30, 1980, circuit court consent order and the contested hearing of May, 1981. This state of affairs continued to the date of the lower court's ruling herein.

We also acknowledge that the *Siwik-Deel* rule is less than a model of clarity for trial courts, who must continue to balance the two presumptions in cases such as this. However, we believe that the remaining problems arising out of these competing presumptions may be effectively resolved by refinement of the standard rather than replacement.

As we concluded in *Deel,* the fact that the two presumptions are opposed in certain cases does not mean that they cancel each other out. On the other hand, it cannot mean that the burden of proof in each presumption must continue to be applied literally. Such a conclusion would only lead trial courts into a logical paradox. We therefore conclude that, in instances in which both the parental presumption of § 5 and the established custodial environment presumption of § 7 are applicable, the burden of proof evolves into a preponderance of the evidence. A remaining question is which party bears the burden of proof.

In *Deel,* as quoted *supra,* we noted that the statutory language and our prior decisions suggest that the burden of proof is on the third party to rebut the parental presumption. However, *Deel* also notes that proof of the existence of an established custodial environment could effectively rebut the parental presumption. We think that it is obvious that each party bears the burden of proof vis-à-vis his own presumption. The key issue is who bears the burden of persuasion in these cases.

We hold that the burden of persuasion rests with the parent challenging an established custodial environment in the home of a third party. In doing so, we are not unmindful of the special care with which the Legislature articulated the parental presumption, nor are we unmindful of the fact that the established custodial environment presumption is purely procedural. Nevertheless, it is clear that the best interest of the child is the primary goal of the act. MCL 722.27(1); MSA 25.312(1), *Deel, supra,* p 559, and cases cited therein. We believe that placing the burden of persuasion on the parent challenging an established custodial environment is better calculated to elicit the quality of testimony and evidence required by a trial court in its determination of the best interest of the child. We also believe that, as indicated by the expert testimony in this and other cases, the importance of residence with a biological parent pales beside the importance of stability and continuity in the life of a child. Of course, if the trial court finds more than a mere biological relationship, it remains free under *Deel* to accord greater or even dominant substantive weight to the parental relationship. Finally, we do not believe that the burden of persuasion by a preponderance of the evidence unduly oppresses the rights of a parent. Once the burden has been

met, both presumptions would vest in the parent, making further changes of custody unlikely.

After reviewing the trial court's analysis, we are satisfied that the correct burdens of proof and persuasion were applied. Defendant has failed to establish by a preponderance of the evidence that the best interest of Marlena rests other than in the established custodial environment of the plaintiffs' home. Indeed, were the standard otherwise, we would conclude that the plaintiffs have established by clear and convincing evidence that the best interest of Marlena does not rest in defendant's custody.

Affirmed.