## MAZURKIEWICZ v MAZURKIEWICZ

Docket No. 99738. Submitted October 8, 1987, at Grand Rapids. Decided November 16, 1987.

Carol A. and Robert J. Mazurkiewicz were divorced in the Ottawa Circuit Court and custody of their two children was awarded to defendant, Robert Mazurkiewicz, James E. Townsend, J. Plaintiff appealed, alleging error in the court's failure to find an established custodial environment with her and in awarding custody to defendant.

The Court of Appeals *held*:

1. Child custody cases are considered de novo by the Court of Appeals and the evidence is examined apart from the trial court's findings of fact, but review is limited by the section of the Child Custody Act which requires all orders and judgments of the circuit court to be affirmed on appeal unless the court made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. An "established custodial environment" under the Child Custody Act depends on a custodial relationship of a significant duration in which the child is provided the parental care, discipline, love, guidance, and attention appropriate to his age and individual needs, and a relationship between the custodian and child which is marked by qualities of security, stability, and permanence. The court's findings of no established custodial environment did not constitute a palpable abuse of discretion or clear legal error nor was it against the great weight of the evidence.

2. The court did not err in its findings on the relevant factors for determining child custody and, on balance, the best interests of the children are better served by a custody award to defendant.

Affirmed.

1. Appeal — Child Custody.

Child custody cases are considered de novo by the Court of

References

Am Jur 2d, Divorce and Separation §§ 545, 963 *et seq.*

See also the annotations in the Index to Annotations under Custody and Support of Children.

Appeals and the evidence is examined apart from the trial court's findings of fact, but review is limited by the section of the Child Custody Act which requires all orders and judgments of the circuit court to be affirmed on appeal unless the court made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY — CUSTODIAL ENVIRONMENT.

An "established custodial environment" under the Child Custody Act depends on a custodial relationship of a significant duration in which the child is provided the parental care, discipline, love, guidance, and attention appropriate to his age and individual needs, and a relationship between the custodian and child which is marked by qualities of security, stability, and permanence (MCL 722.27; MSA 25.312[7]).

*Zerrenner, Landers & Haynes* (by *James W. Zerrenner*), for plaintiff.

*Dilley, Dewey & Damon, P.C.* (by *A. Newton Dilley*), for defendant.

Before: DANHOF, C.J., and CYNAR and J. E. MIES,* JJ.

PER CURIAM. Plaintiff appeals as of right from a judgment of divorce entered on March 30, 1987, which awarded permanent custody of the parties' minor children to defendant. We affirm.

Plaintiff and defendant were married on September 10, 1977. Two children were born during their marriage: Matthew J., May 8, 1980, and Tina M., December 1, 1983. The parties resided as husband and wife until the wife filed a complaint for divorce on September 27, 1985. In response, defendant filed a counter-complaint for divorce on March 12, 1986, seeking custody of the minor children. Pending the outcome of the divorce proceedings, on March 4, 1986, the parties entered a

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

consent order which awarded temporary custody of the children to plaintiff. The parties also stipulated to an evaluation and recommendation by the friend of the court regarding custody of the children. They also stipulated to the entry of an order prohibiting the visitation of friends of the opposite sex of the parties in the presence of the children.

Trial took place on November 11, 1986. Marla Jean Seidelman of the friend of the court testified regarding her investigation and evaluation on the custody issue. She recommended that the children remain in the physical custody of the plaintiff with follow-up counselling for all of the parties. The friend of the court found no clear-cut established custodial environment.

Defendant testified that he left the marital home in October of 1985. He maintained regular weekly visitations with his children. In March of 1986, defendant petitioned for custody of the children on the basis that plaintiff was not a good mother. Defendant believed that plaintiff was a bad mother because she left the children with baby-sitters too often, neglected their religious training and failed to clothe them properly. Defendant believed that plaintiff loved the children. However, he felt that she was not taking care of them properly.

A list of the baby-sitters was introduced into evidence. Defendant indicated that, shortly after Tina's birth, plaintiff stayed away from the home very often and the children were constantly with baby-sitters. During the last year of the marriage, defendant was the children's primary caretaker and he took care of the home.

Defendant further testified that plaintiff had several male friends. One was a dentist she met while on vacation in Florida. Another was a person with whom plaintiff spent many evenings.

Defendant telephoned him inquiring whether he had had sexual relations with plaintiff. Such relations were denied. She met the other male friend in July of 1985, when she drove to his home in Charlevoix to do interior decorating work.

Plaintiff testified that she did not have any extramarital relationships during the course of the marriage. At the beginning of 1986 she became romantically involved with the man whose home she was decorating. Plaintiff acknowledged that the psychologist observed that she had an outgoing and flirtatious personality.

She also stated that, while working part-time, she left the children with baby-sitters. Tina was left with a sitter for about twelve hours per week and Matthew about four hours. Plaintiff also indicated that if she was awarded custody she would facilitate visitation for the defendant. She did not believe that she neglected the children's religious training. Plaintiff also denied that defendant had been primarily caring for the children during the last year of the marriage.

Friends of plaintiff and defendant testified that plaintiff was a good mother and took care of the children. The parties' friends have seen defendant become jealous of plaintiff when one of the friend's husband asked plaintiff to dance. A male friend of plaintiff also testified and said that he has never seen plaintiff display any loose or immoral behavior.

Finally, plaintiff's sister and father testified that both parties were good parents. The sister said that she told plaintiff that plaintiff should change her lifestyle. Otherwise, the sister would testify that defendant was better suited to take custody of the children. Her father believed that defendant was a very stable person. He had told plaintiff that he did not like her lifestyle.

Following the hearing, the trial court issued its opinion from the bench on March 9, 1987. The court adopted the friend of the court's determination that there was no established custodial environment. Thereafter, the court addressed each of the eleven factors in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, and found that the best interests of the children would be served by awarding custody to defendant. It is from this decision that plaintiff appeals raising two issues.

First, she argues that the trial court erred by not finding that there was an established custodial environment with her. She maintains that, although defendant exercised liberal visitation with the children during the 1½ years pending resolution of the divorce, it is clear that there existed a custodial environment with her as required by MCL 722.27(1)(c); MSA 25.312(7)(1)(c).

The trial court's findings in child custody cases are reviewed de novo by this Court. The reviewing court must appraise the evidence apart from the trial court's findings. *Glover v McRipley,* 159 Mich App 130, 133; 406 NW2d 246 (1987). However, relief is ultimately governed by § 8 of the Child Custody Act which provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. [MCL 722.28; MSA 25.312(8).]

The first step in deciding any child custody dispute is to determine if there exists an established custodial environment. *Stringer v Vincent,*

161 Mich App 429, 434; 411 NW2d 474 (1987). The Child Custody Act requires that a court refrain from changing custody if it would change the established custodial environment, unless presented with clear and convincing evidence that such change is in the best interest of the child. MCL 722.27(1)(c); MSA 25.312(7)(1)(c).

In determining whether an established custodial environment existed, our inquiry begins with reference to MCL 722.27(1)(c); MSA 25.312(7)(1)(c), which, in pertinent part, provides:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

In *Baker v Baker,* 411 Mich 567, 579-580; 309 NW2d 532 (1981), the Michigan Supreme Court reviewed this statutory language:

> Such an environment depended instead upon a custodial relationship of a significant duration in which [the child] was provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence.

In *Baker,* a son, Arthur Lee, was born to the parties. The parties had another child who was a product of the wife's previous marriage. From the time of Arthur's birth (August, 1970) until June, 1978, the two children resided with the parents.

In June, 1978, defendant wife took the children to Colorado for a vacation. One month later she returned and told her husband she wanted a divorce. After the divorce complaint was filed, the parties agreed that defendant wife and the children would return to Colorado where they would establish a new home. Two months later, the father appeared unannounced in Colorado and took Arthur back to Michigan. Arthur remained with the plaintiff father's parents for seven weeks prior to trial. The Supreme Court found no established custodial environment with the father since Arthur did not return to the home or the settled environment from which he was taken in June. Instead, he was living in the home of his paternal grandparents. The Court also noted that whatever community contacts and familiar associations Arthur may have had before June, 1978, were not by their very nature sufficient to preserve that environment. It dissolved and the boy entered into a new custodial relationship with his father alone, in an altered lifestyle and in a new home. The Court concluded by stating that at the time of trial there was no appreciable time during which the child looked to the father *alone* for "guidance, discipline, the necessities of life and parental comfort" in a stable, settled atmosphere. 411 Mich 581-582.

More recently, this Court has suggested that, in order to determine whether an established custodial environment exists, we need to examine the circumstances surrounding the care of the children in the years immediately preceding the divorce trial. See *Schwiesow v Schwiesow,* 159 Mich App 548, 557; 406 NW2d 878 (1987). In *Schwiesow,* this Court found an established custodial environment where the children had lived all their lives on their father's farm. During the parties' five-year

marriage, plaintiff mother was absent from the home for long periods of time attending college. In *Breas v Breas*, 149 Mich App 103; 385 NW2d 743 (1986), we affirmed a trial court's finding that no established custodial environment existed where the mother had physical custody, pending a divorce, but where the father exercised frequent visitation, sought permanent custody and where the environment provided for the child was not permanent. In *Curless v Curless*, 137 Mich App 673; 357 NW2d 921 (1984), we also affirmed a trial court's finding of no established custodial environment where the children were staying with the mother pending a divorce but the father frequently visited and asked for permanent custody in the divorce proceedings.

In this case, the trial court adopted the finding of the friend of the court which concluded that there was no established custodial environment. The court also found that defendant maintained frequent visitation with the children and was their primary caretaker before leaving the home. The court also noted that plaintiff mother was frequently away from the home after Tina's birth, leaving the children to the care of baby-sitters. On these facts, we cannot conclude that the court's conclusion of no established custodial environment with the plaintiff mother constitutes a palpable abuse of discretion or clear legal error or is against the great weight of the evidence.

In her second allegation of error, plaintiff argues that the trial court erred by awarding custody to defendant father. The Child Custody Act specifies ten factors for the trial court's consideration in custody disputes and also allows the court to consider any other factor it deems to be relevant in a particular dispute. MCL 722.23; MSA 25.312(3). Plaintiff challenges the court's findings on three of

the specified factors as being against the great weight of the evidence.

The first challenge is aimed at factor (c):

> The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs. [MCL 723.23(c); MSA 25.312(3)(c).]

The trial court weighed this factor in favor of defendant on the basis of his stable earnings and employment history. Plaintiff argues that this finding was erroneous because she was the primary homemaker and, therefore, less capable of providing for the children's needs.

This Court recognizes that placing undue reliance on this factor is unfair because in most cases the mother, as homemaker, will be disadvantaged. More importantly, undue emphasis on the economic factor will have a potentially prejudicial effect upon the child's best interest. See *Dempsey v Dempsey,* 96 Mich App 276, 289-290; 292 NW2d 549 (1980), modified 409 Mich 495; 296 NW2d 813 (1980).

However, in our case, the court did not place an undue amount of reliance on this factor. The court's reference merely indicated that the father had a better work history than plaintiff. We see no error in this finding.

Plaintiff next challenges the court's finding as to factor (e):

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes. [MCL 722.23(e); MSA 25.312(3)(e).]

On this factor, the trial court gave a slight

advantage to the father "because of the plaintiff's inclination to experiences in developing inappropriate relations with other persons during her marriage." Plaintiff alleges that the friend of the court's recommendation, which gave no advantage to either party, should have been used.

We do not find the court's conclusion to be against the great weight of the evidence. The plaintiff's social interest outside the home, coupled with the frequent use of baby-sitters, indicated that these circumstances do have an impact on the permanence and continuity of the custodial family unit. Thus, we find no error.

Finally, plaintiff challenges the court's finding on factor (f):

> (f) The moral fitness of the parties involved. [MCL 722.23(f); MSA 25.312(3)(f).]

On this factor, the court rated the parties as equal. However, the court noted that there was a question regarding plaintiff's relationship with another man. Since the court found both parties equally morally fit, plaintiff presents no basis for complaining about this finding.

Finally, we note that, on balance, the best interests of the children would be better served by awarding custody to defendant and the court's findings are affirmed.

Affirmed.