SCHWIESOW v SCHWIESOW

Docket No. 87087. Submitted June 3, 1986, at Lansing. Decided April
    21, 1987.
    Plaintiff Kimberle A. Schwiesow and defendant Frank M. Schwie-
    sow were married in 1973. Two children were born of the
    marriage. Plaintiff left the parties' home in October of 1983
    and brought a complaint for a divorce on May 4, 1984, in the
    Presque Isle Circuit Court. Plaintiff requested permanent physi-
    cal and legal custody of the children. Both parties moved for
    temporary custody of the children. The parties thereafter en-
    tered into a stipulation providing that defendant would have
    primary physical custody of both children until the end of the
    1984-1985 school year and that plaintiff would have primary
    physical custody during the summer vacation period beginning
    July 1, 1985. The children resided with their father from
    October of 1983 until at least June 1, 1985. At the conclusion of
    the custody portion of the trial on May 31, 1985, the trial court,
    Robert R. Ferguson, J., awarded the parties joint legal custody
    with physical custody to alternate between the parties every
    other school year. Plaintiff was awarded primary physical
    custody commencing September 1, 1985, for the 1985-86 school
    year and defendant was awarded primary physical custody
    commencing September 1, 1986, for the 1986-87 school year.
    Custody is to be shared by the parties during the summer
    months. The judgment of divorce was entered August 20, 1985.
    Defendant thereafter appealed and sought a stay in the Court
    of Appeals of the custody transfer pending resolution of the

REFERENCES

Am Jur 2d, Divorce and Separation §§ 864, 878 *et seq.*; 905-914, 915
    *et seq.*; 948, 974-991, 1003-1017.
Am Jur 2d, Infants §§ 28-32, 42 *et seq.*
Am Jur 2d, Parent and Child §§ 25-45.
Divorce: equitable distribution doctrine. 41 ALR4th 481.
Propriety of awarding joint custody of children. 17 ALR4th 1013.
Pension or retirement benefits as subject to award or division by
    court in settlement of property rights between spouses. 94 ALR3d
    176.
See also the annotations in the Index to Annotations under Custody
    and Support of Children; Divorce and Separation.

appeal. Defendant's request for a stay was denied by the Court of Appeals. On appeal, defendant challenges the arrangement of alternating physical custody but does not seek reversal of the award of joint legal custody. Defendant also alleges that the trial court erred in including his farm as a marital asset, in excluding an insurance settlement received by the plaintiff as a marital asset, in refusing to impute some earning capacity to plaintiff and in awarding plaintiff a portion of defendant's savings-retirement account.

The Court of Appeals *held:*

1. The children had an established custodial environment with their father at the time of trial. Therefore, plaintiff had the burden of coming forward with clear and convincing evidence to show that a change of environment would be in the best interests of the children. The evidence, based on the trial court's own findings, did not clearly and convincingly establish that a change in custodial environment would be in the best interests of the children. The case is remanded for a hearing at which the trial court shall determine whether there is clear and convincing evidence to justify a disruption in the established custodial environment of the family farm where defendant resides. Unless the trial court is presented with clear and convincing evidence to warrant a contrary finding, the court shall enter a custody order after the hearing on remand in favor of preserving the established custodial environment.

2. The trial court did not abuse its discretion in awarding plaintiff an interest in the farm equal to approximately one-third of its value and the entire proceeds of the insurance settlement.

3. The award to plaintiff of the $130,000 insurance settlement rendered division of the savings-retirement account unnecessary. Defendant should be awarded such account.

Affirmed in part, and remanded for further proceedings on the issue of custody and for entry of a modified judgment awarding defendant's savings-retirement plan to him free and clear of any interest on the part of plaintiff.

D. E. HOLBROOK, JR., J., concurred in the result only.

1. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILDREN — CHANGE OF ENVIRONMENT.

Child custody disputes must always be resolved in favor of the best interests of the children involved; a court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it

is in the best interests of the child (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

2. DIVORCE — CHILD CUSTODY — JOINT CUSTODY.

A trial court in a divorce action may order the parties to share physical custody of their children where the parties compare equally under the totality of the factors which determine the best interests of the children (MCL 722.23, 722.26a; MSA 25.312[3], 25.312[6a]).

3. DIVORCE — BEST INTERESTS OF CHILDREN — CHANGE OF ENVIRONMENT — BURDEN OF PROOF.

The plaintiff in a divorce action has the burden of coming forward with clear and convincing evidence to show that a change of environment would be in the best interest of the parties' children where an established custodial environment exists with the defendant.

4. DIVORCE — CHILD CUSTODY — JOINT CUSTODY.

A trial court in a divorce action may order that the parents share joint custody of their children only where the parents will be able to cooperate on matters concerning their children (MCL 722.26a[1][b]; MSA 25.312[6a][1][b]).

5. DIVORCE — MARITAL ASSETS — APPEAL.

A trial court in a divorce action has considerable discretion in rendering what it views to be an equitable property division upon divorce; the Court of Appeals reviews the evidence de novo and does not disturb that disposition unless there has been an abuse of discretion.

6. DIVORCE — MARITAL ASSETS.

A trial court in a divorce action must consider, in dividing marital assets, the duration of the marriage, each party's contribution to the marital estate, the parties' stations in life and earning abilities, fault, if any, in the breakdown of the marriage and any other relevant circumstances.

7. DIVORCE — MARITAL ASSETS — PENSION PLANS.

A pension plan is a marital asset subject to division upon divorce, however, any equitable disposition of marital property does not necessarily require the division of the pension plan.

8. DIVORCE — MARITAL ASSETS — NONMARITAL ASSETS.

Nonmarital assets may be considered in the division of marital property where the marital assets are insufficient to support the parties separately.

*Boyce, White & Werth* (by *David P. Werth*), for plaintiff.

*Jason, Kowalski, Poch & Bartko* (by *Gregory Bartko*), for defendant.

Before: M. J. KELLY, P.J., and D. E. HOLBROOK, JR., and T. M. GREEN,* JJ.

M. J. KELLY, P.J. Defendant Frank Schwiesow appeals as of right from the property and child custody provisions of a divorce judgment entered August 20, 1985. We remand for further proceedings consistent with this opinion.

Plaintiff and defendant were married on August 25, 1973, when plaintiff was sixteen and defendant twenty-seven years of age. Two children were born of the marriage, a son, Cody William Schwiesow, born October 23, 1975, and a daughter, Sky Nicole Schwiesow, born June 11, 1977.

Immediately after their marriage, the parties moved to the Schwiesow family farm which had been in defendant's family for generations and which had been given to defendant by his father as a gift in June of 1972. During the early years of their marriage, the parties worked together making extensive repairs to the farmhouse, adding a basement, remodeling the kitchen, and adding a fireplace and a new heating system. The parties also tore down old outbuildings, repaired and replaced fencing and added stalls to the barn. The parties built a 24' by 30' workshop outside the house. In 1976, defendant executed a deed on the farm property naming himself and plaintiff tenants by the entirety.

At all times during the marriage, defendant was employed by the Presque Isle Electric Company.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The farm was not a money-making venture and, at the time of trial, defendant's sole income was $450 a week in net salary. Plaintiff completed her high school education and graduated magna cum laude from Alpena Area Community College in the years following the parties' marriage. In 1980, plaintiff began school at Saginaw Valley State College and graduated in December of 1982 with a bachelor's degree and a secondary teaching certificate. In order to attend Saginaw Valley State College, which was some distance from the parties' home, plaintiff resided in an apartment with her two brothers in Saginaw during the week and commuted home for the weekends. During the years plaintiff attended Saginaw Valley State College, plaintiff's mother stayed in the parties' home and helped defendant care for the two minor children during the week.

Plaintiff completed her bachelor's degree work in December of 1982 and moved back home. On October 20, 1983, however, plaintiff left the marital home and moved several miles away to Black Lake, where she and the children took up residence with her mother. On December 17, 1983, plaintiff was involved in a serious automobile collision and suffered closed-head injuries, resulting in a coma. The children were immediately returned to the farm and resided there with their father.

Plaintiff slowly emerged from the coma and was discharged from the hospital on April 14, 1984. Plaintiff continued to make steady recovery and at the time of trial was only minimally impaired. She has some residual weakness in her right hand which prohibits her from cooking on a gas stove. Because of poor balance, plaintiff used a quad cane at the time of trial but her doctors anticipated that she would advance to a single cane within a matter of months. Plaintiff's speech is good but

somewhat slower than it was prior to the accident. Plaintiff is unable to drive and relies wholly upon her mother for transportation. When plaintiff left the parties' home in October of 1983, she moved into a small private apartment attached to her mother's house, comprised of a kitchenette, living room, bedroom and bath.

Plaintiff filed for divorce on May 4, 1984, less than one month after her discharge from the hospital, and requested permanent physical and legal custody of the two children. Although plaintiff filed a motion for temporary custody in August of 1984, an order was never entered on that motion. On December 22, 1984, plaintiff left with her mother for Kansas where she remained until April 13, 1985, just prior to trial in this case. While in Kansas, plaintiff further recuperated from her injuries by swimming and walking daily. She exercised no visitation with her children during the 3½-month stay in Kansas.

Defendant eventually moved for a temporary custody order and on February 19, 1985, the parties entered into a stipulation providing that defendant would have primary physical custody of both children until the end of the 1984-85 school year and that plaintiff would have primary physical custody during the summer vacation period beginning July 1, 1985. Since the parties' separation in October of 1983, the minor children have resided at the farm with their father from December of 1983 until at least June 1, 1985.[1]

---

[1] The trial court's temporary custody order provided that the children would stay with defendant until July 1, 1985. In his brief on appeal, defendant contends that he maintained physical custody until September 1, 1985. Plaintiff contends in her brief on appeal that commencing on June 1, 1985, until September 1, 1985, "the children alternated residences on a weekly basis between the mother and the father." Since the second custody hearing was conducted in May of 1985, we do not have a record of the custody arrangements as they existed after that date.

The custody portions of the trial were conducted on April 18 and May 31, 1985. At the conclusion of the May hearing, the trial court awarded the parties joint legal custody with physical custody to alternate between the parties every other school year. Plaintiff was awarded primary physical custody of the children commencing September 1, 1985, for the 1985-86 school year and defendant was awarded primary physical custody of the children commencing September 1, 1986, for the 1986-87 school year. Custody is to be shared by the parties during the summer months. The judgment of divorce was entered August 20, 1985, following which defendant sought in this Court a stay of the custody transfer pending resolution of this appeal. Defendant's request for a stay was denied by this Court by order of September 3, 1985. The parties waived oral argument on appeal. We presume, however, that plaintiff exercised her custody rights for the school year that has just ended.

I

Defendant challenges the arrangement of alternating physical custody but does not seek reversal of the award of joint legal custody. Defendant argues that the trial court erred in refusing to find an established custodial environment and in thus relieving plaintiff of the burden of establishing by clear and convincing evidence that a change in established custodial environment was in the best interest of the children. MCL 722.27(1)(c); MSA 25.312(7)(1)(c). Defendant correctly apprehends the critical issue. Absent the existence of an established custodial environment, the parties compare equally under the totality of factors which determine the best interests of the children, MCL 722.23; MSA 25.312(3), in which case the trial

court was free to order a shared physical custody arrangement. MCL 722.26a; MSA 25.312(6a).

The trial court in this case rendered extensive and detailed findings on each of the factors enumerated in MCL 722.23; MSA 25.312(3). It is clear from these findings that in refusing to find an established custodial environment, the trial court was reluctant to "punish" the plaintiff mother for her misfortune of having been seriously injured at an inopportune time, especially where all other evidence revealed that she was a particularly responsible and self-motivated individual. We share the trial court's concern. However, the Legislature has made a policy decision to standardize the criteria for resolving custody disputes. *Baker v Baker,* 411 Mich 567, 576; 309 NW2d 532 (1981). Under the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.,* custody disputes must always be resolved in favor of the best interests of the children involved. In accordance with this emphasis on the children's interests, the Legislature has imposed a difficult burden on those who seek to remove children from an established custodial environment:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may:
>
> * * *
>
> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented

clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c); MSA 25.312(7)(1)(c).]

We are persuaded on the basis of the evidence presented that the two minor children in this case had an established custodial environment with their father at the time of trial. Both children had lived in that setting all of their lives. Both had established good to excellent academic records at the local school which they attended. For most of the five years immediately preceding the divorce trial, there were long absences on the part of the mother. From some undisclosed date in 1980 until December of 1982, when Cody was between four and seven and Sky between two and five, the plaintiff resided away from the home during the weekdays to attend school at Saginaw Valley State College. Defendant and the children's maternal grandmother were the primary caretakers of the children during this time. After plaintiff graduated, she moved back home for a period of about ten months and then left with her children to reside with her mother. The children were with plaintiff for approximately two months and then spent the next eighteen to twenty months on the farm in the primary physical custody of their father. During the three or four months in which plaintiff was in a coma and during the 3½ months that plaintiff was in Kansas, the children had no visitation with their mother.

We do not mean to imply that plaintiff is in any

way blameworthy for her absences from the children. We examine the circumstances surrounding the care of the two minor children in the years immediately preceding the divorce trial to determine whether they were being cared for in an established custodial environment. Our concern is not with the reasons behind the custodial environment but with the existence of such an environment. See *Moser v Moser,* 130 Mich App 97, 100; 343 NW2d 246 (1983), *Wealton v Wealton,* 120 Mich App 406, 410; 327 NW2d 493 (1982), and *Blaskowski v Blaskowski,* 115 Mich App 1; 320 NW2d 268 (1982). There is no doubt that the minor children in this case had an established custodial environment at the time of trial. This is not a case in which the children resided with one parent in temporary living quarters and had extensive contact with the noncustodial parent, pending resolution of an extended custody dispute. See *Breas v Breas,* 149 Mich App 103; 385 NW2d 743 (1986), and *Curless v Curless,* 137 Mich App 673; 357 NW2d 921 (1984). Nor is this a situation in which the custodial parent, after having established a stable and permanent custodial environment, voluntarily and temporarily relinquishes physical custody for a particular purpose and pursuant to a stipulated order. See *Theroux v Doerr,* 137 Mich App 147; 357 NW2d 327 (1984).

In this case, the minor children have lived since birth in the family home with defendant father having continuous and nearly uninterrupted custody. For various reasons, plaintiff mother has been temporarily absent from the home a significant part of the five years preceding the divorce trial. We conclude that because an established custodial environment existed, plaintiff had the burden of coming forward with clear and convinc-

ing evidence to show that a change of environment would be in the best interests of the children.

Based on the trial court's own findings at the conclusion of trial, the evidence did not clearly and convincingly establish that a change in custodial environment would be in the best interests of the children. The trial court considered each of the factors enumerated in MCL 722.23; MSA 25.312(3) and concluded that the parents compared equally. However, we are not prepared to remand with directions to the trial court to enter a custody order in favor of defendant. Much has happened in the preceding year to significantly affect the best interests of the children. They have spent an entire school year with their mother and possibly two summers under the alternating-custody arrangement. We therefore remand this case for a hearing at which the trial court shall determine whether there is clear and convincing evidence to justify a disruption in the established custodial environment of the family farm. We note that such a hearing is similar to the hearing expressly provided for by the trial court in its judgment of August 20, 1985:

> IT IS FURTHER ORDERED that the issue of primary physical custody shall be reviewed by the Court at the end of the 1985-86 school year or sooner on the petition of the Defendant alleging a material change in circumstances.

One factor to be weighed at the hearing on remand is the wishes of the children with regard to alternating custody. At trial, both children strongly stated that they did not wish to live in different places from school year to school year. In addition, testimony at trial established that there was very little communication between the parties

with regard to the children or anything else, which suggests to us some residual tensions or hostility. Pursuant to MCL 722.26a(1)(b); MSA 25.312(6a)(1)(b), joint custody is available only where "the parents will be able to cooperate" on matters concerning their children. Unless the trial court is presented with clear and convincing evidence to warrant a contrary finding, the court shall enter a custody order after the hearing on remand in favor of preserving the established custodial environment.

II

Defendant also argues on appeal that the trial court erred in including the farm as a marital asset, in excluding the insurance settlement as a marital asset, in refusing to impute some earning capacity to plaintiff and in awarding plaintiff a portion of defendant's savings-retirement account. The parties' assets at the time of the divorce consisted primarily of $130,000 in insurance settlement proceeds arising out of the automobile accident, the farm valued at approximately $66,000, a vested savings-retirement account through defendant's employer which at the time of trial contained $33,700, a $4,000 savings account and various items of personal property and farm equipment with stipulated[2] values.

The trial court awarded to plaintiff all of the $130,000 in insurance proceeds, a lien against the farm property in the amount of $23,000, payable five years from the date of judgment, and $15,000 as plaintiff's share of the savings-retirement plan, payable within one year from the date of judgment or subject to a seven percent interest charge there-

[2] The parties settled on a division of farm and personal assets which was equalized by awarding plaintiff the $4,000 in savings.

after. Defendant argues on appeal that it is inequitable for plaintiff to receive all of the insurance proceeds as well as a $23,000 lien against the farm property, which had been passed on through defendant's family for generations. Defendant further argues that the trial court improperly calculated plaintiff's share of the savings-retirement plan and rendered an award unduly burdensome to the defendant.

The trial court in a divorce action has considerable discretion in rendering what it views to be an equitable property division upon divorce and this Court, though we review the evidence de novo, does not disturb that disposition unless there has been an abuse of discretion. In dividing marital assets, the trial court must consider the duration of the marriage, each party's contribution to the marital estate, the parties' stations in life and earning abilities, fault, if any, in the breakdown of the marriage and any other relevant circumstances. See *Bone v Bone,* 148 Mich App 834, 838-839; 385 NW2d 706 (1986), and cases cited therein.

In this case, the parties were married almost twelve years prior to the divorce and enjoyed a moderate lifestyle. Both parties contributed equally to the marriage. Testimony revealed that during the marriage significant improvements had been made to the Schwiesow farm with marital funds and labor and that plaintiff had helped in making those improvements. We do not believe the trial court abused its discretion in awarding plaintiff an interest in the farm equal to approximately one-third of its value.

Nor do we think there was error in the trial court's decision to award plaintiff the entire proceeds of the insurance settlement. Those proceeds were intended to compensate plaintiff for her injuries, which were serious and long-term. Plaintiff's

planned investment of the funds will yield her a monthly income of $863 when combined with her social security benefits, which are minimal. It is also quite possible that plaintiff, who is relatively young, will enjoy future earnings as she progresses through the rehabilitation process. Moreover, if she invests the $23,000 that she will receive as her interest in the marital property in the same manner that she is investing the $130,000 received in the settlement, she will have a monthly income of nearly $1,000. Defendant nets $450 a week for a monthly net income of between $1,800 and $2,000. If we reduce defendant's income by the amount he will have to pay in loan payments on the $23,000 owed plaintiff and due five years from the date of judgment, and if we further reduce defendant's income by the amount he will have to pay in child support if the children remain with plaintiff during any significant periods, or, in the alternative, by the amount necesssary to support his children while they are living with him, his net income will be comparable to that enjoyed by plaintiff from the investment of her liquid assets. We think this result is equitable.

We do not, however, agree that plaintiff is entitled under the circumstances of this case to a portion of the savings-retirement plan. Although it is a marital asset subject to division upon divorce, an equitable disposition of marital property does not necessarily require the division of a pension plan, see *Bone v Bone, supra* at 839-840, and we think that the award of the $130,000 settlement rendered division of the savings-retirement account unnecessary. Even if we assume that the proceeds from the insurance settlement do not constitute a marital asset, nonmarital assets may be considered in the division of marital property where the marital assets are insufficient to support

the parties separately. See *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976).

The funds contained in the savings-retirement plan are not available to plaintiff until his position with his employer is terminated, presumably upon his retirement. At that time, defendant will have only the savings-retirement plan to rely on for his support and maintenance. Plaintiff, in the meantime, will still have the principal of the insurance settlement in addition to whatever pension benefits she may earn through future employment. Given plaintiff's receipt of $130,000, we think it fair to leave defendant his savings-retirement plan for his retirement years.

We further note that even if we were to agree that the savings-retirement account should be divided as a marital asset in order to achieve an equitable property division, we could not affirm the award in this case because we are not satisfied that it is supported by any evidence on the record. The only evidence introduced by either party at trial regarding the valuation of the savings-retirement account was a document showing the amount of money actually in the account, $33,700. Neither party produced any expert testimony or evidence regarding the present value of this amount in light of the fact that the money could not be obtained until some undetermined point in the future. The trial court simply divided the amount by one-half to arrive at a figure of $16,850 and reduced that amount by $1,850 to account for "present value," rounding plaintiff's award off to $15,000. We do not think this is an appropriate way to determine the value of so significant a marital asset as a pension or retirement plan. See *Zecchin v Zecchin,* 149 Mich App 723, 730-731; 386 NW2d 652 (1986), and *Boyd v Boyd,* 116 Mich App

774, 779-780; 323 NW2d 553 (1982). If plaintiff were to receive a portion of the savings-retirement plan, the value of that plan would have to be reduced to present value. Although the funds are vested, they are not available until some future event. It was plaintiff's burden to come forth with evidence regarding the present value of the savings plan and her failure to do so precludes, under these circumstances, the award of $15,000.

We affirm in part and remand for further proceedings consistent with this opinion on the issue of custody and for entry of a modified judgment of divorce awarding defendant's savings-retirement plan to him free and clear of any interest on the part of plaintiff.

We do not retain jurisdiction.

D. E. HOLBROOK JR., J., concurred in the result only.