VANDER MOLEN v VANDER MOLEN

Docket No. 100543. Submitted October 8, 1987, at Grand Rapids. Decided November 16, 1987.

Plaintiff, Jacalyn Vander Molen, and defendant, Wesley Vander Molen, were granted a judgment of divorce in the Ottawa Circuit Court. The trial court, James E. Townsend, J., awarded custody of the parties' minor daughter to plaintiff and custody of their three minor sons to defendant. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court's determination that no established custodial environment existed with plaintiff as to the three boys was not error or against the great weight of the evidence. The trial court applied the proper standard in determining the nonexistence of an established custodial environment.

2. The trial court did not err in its determinations regarding expressions of preference by the boys.

3. The evidence, as a whole, supports the trial court's determination that it is in the best interests of the boys to grant custody of them to their father.

Affirmed.

1. APPEAL — CHILD CUSTODY.

The Court of Appeals reviews de novo the trial court's findings in child custody cases; the Court of Appeals must appraise the evidence apart from the trial court's findings.

2. APPEAL — CHILD CUSTODY.

All orders and judgments of a circuit court in a child custody dispute shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or commit-

REFERENCES

Am Jur 2d, Appeal and Error § 136.

Am Jur 2d, Divorce and Separation §§ 963 *et seq.*; 1145.

Am Jur 2d, Parent and Child §§ 23 *et seq.*

Validity, construction, and application of Uniform Child Custody Jurisdiction Act. 96 ALR3d 968.

See also the annotations in the Index to Annotations under Custody and Support of Children.

ted a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

3. PARENT AND CHILD — CHILD CUSTODY — ESTABLISHED CUSTODIAL ENVIRONMENT.

The Child Custody Act requires that a court refrain from changing custody if it would change the established custodial environment, unless presented with clear and convincing evidence that such change is in the best interest of the child (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

4. PARENT AND CHILD — CHILD CUSTODY — ESTABLISHED CUSTODIAL ENVIRONMENT.

A trial court's first step in a child custody dispute is to determine if there exists an established custodial environment; a custodial environment is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort; the age of the child, the physical environment and the inclination of the custodian and the child as to permanency of the relationship shall also be considered (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

5. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD.

A trial court deciding a child custody matter must evaluate each of the eleven factors contained in the Child Custody Act and state a conclusion on each, thereby determining the best interests of the children (MCL 722.23; MSA 25.312[3]).

*Cunningham, Mulder & Breese, P.C.* (by *Ronald J. Vander Veen*), for plaintiff.

*Scholten, Fant & Marquis* (by *R. Neal Stanton*), for defendant.

Before: DANHOF, C.J., and CYNAR and J. E. MIES,* JJ.

CYNAR, J. Plaintiff appeals as of right from the June 29, 1987, judgment of divorce which awarded custody of the parties' three minor sons to defendant. We affirm.

Plaintiff and defendant were married on October

* Circuit judge, sitting on the Court of Appeals by assignment.

2, 1970. Four children were born from the marriage: Laura Jo, born April 5, 1971; Michael W., born June 1, 1972; James L., born May 29, 1980; and Ryan J., born December 25, 1981. Following the deterioration and eventual breakdown of the marriage, on August 21, 1986, plaintiff filed a complaint for divorce. Simultaneously, plaintiff filed a motion for temporary child support and custody. The trial court granted plaintiff's motion on August 27, 1986, and gave temporary custody of the four children to plaintiff. Defendant was afforded reasonable visitation.

On September 2, 1986, defendant filed objections to the August 27, 1986, order for temporary child custody and support. A brief hearing on defendant's objections took place on October 13, 1986. After the hearing, the court ordered that the status quo be maintained, without prejudice to either party. In addition, the court ordered the Friend of the Court to conduct a child custody investigation and make a recommendation.

Trial took place on April 10, 1987. At the hearing, Gayle Marie Miller, plaintiff's sister, testified that defendant was a good father and the children loved him. Miller said that one of the sons, however, "hates" his mother because of the introduction of a third-party male who is involved with plaintiff. Miller also said that although plaintiff has placed her boyfriend ahead of God and the children, nonetheless, plaintiff is a good mother.

Kathleen Cardenas, another of plaintiff's sisters, also testified that defendant is a good father and a good provider. She said defendant has loved and disciplined the children in a manner consistent with being a good father. Cardenas knew of no reason why defendant's employment would prohibit him from taking care of the children. Cardenas had never heard defendant swear at the chil-

dren or see him hit them. The children openly demonstrate their affection for the father by sitting on his lap and giving him hugs.

Cardenas also said that plaintiff was a good mother. However, since plaintiff and the children moved to Kentwood, the children seem unhappy, frustrated and uneasy. Apparently, plaintiff's male friend resides in Kentwood. According to Cardenas, plaintiff's "bad choices," e.g., her extramarital affair, her decision to divorce defendant, her move to Kentwood, and her violation of the "laws of God and man," have had a great adverse effect on the children.

Delores Hassevoort, defendant's sister, testified that defendant has a very good relationship with the children. He is very attentive to their needs. He does not hit the children or swear at them. He takes the children to church every Sunday.

John Rooks, plaintiff's male friend, also testified and said he had been recently divorced. Prior to his divorce, he had been dating plaintiff and was involved with her seven years prior to the trial. During their relationship, Rooks was also married. Rooks said that he loves plaintiff and intends to marry her. Rooks indicated that one of the minor boys attempted to run away from plaintiff and return to defendant father. Finally, Rooks testified that he has a good relationship with the four children. They seem to love him.

A friend of the parties, Vanetta Shumake, testified that plaintiff is a "super mother" and defendant is a "good father." Shumake said that plaintiff took care of the children. Shumake believed that defendant only sought custody so as to prolong the divorce. She said that the children seemed to love Rooks and were happy with plaintiff.

Timothy C. Vandyke, an employee from the

Friend of the Court office, testified regarding his investigation. He noted some confusion in the children, but no more than what he has observed in other children experiencing the divorce of their parents. Vandyke concluded that an established custodial environment existed with plaintiff. However, he did not investigate the Kentwood environment since plaintiff was still living in Zeeland when he conducted the investigation.

Vandyke further found that during the parties' marriage the children spent most of their time with plaintiff because of defendant's long work hours. Since plaintiff's move to Kentwood, the children spend virtually twenty-four hours per day with plaintiff. Defendant, on the other hand, works long hours. When the children visit defendant, he spends most of the time with the boys. Laura stays in the home doing laundry, dishes, or taking a nap. There is a real possibility that Laura would be placed in a parenting role if defendant was awarded custody of the children. Finally, Vandyke indicated that Laura prefers to be with her mother while Michael wants to be with defendant. He believed that the other boys were too young to express a preference.

Plaintiff testified that she did not want defendant to have custody because she primarily cared for the children during the marriage. Plaintiff said that defendant never cared for them and that defendant felt that it was a "woman's job." She said that defendant is unable to provide for the emotional needs of the children, especially Laura. She said defendant is very critical of females and has stated that he should only have had boys.

Plaintiff basically raised the children. She registered them for school and helped them with their homework. She attended the parent-teachers' conferences and athletic events. Plaintiff also ar-

ranged their piano lessons. Defendant was hardly at home, working sometimes as late as 9:00 P.M. Plaintiff was in charge of the children's discipline. However, on one occasion, defendant apparently kicked Michael in the back and called him "stupid" because Michael did not return one of defendant's tools to its proper place.

Finally, defendant testified. He denied all of plaintiff's allegations of neglect. He did the "father's share as much as she did as a mother." Defendant attended some of the children's sports events. He could not attend the teachers' conferences since they were scheduled during the day when he was working. He helped the little boys with their prayers. He takes the children to church twice on Sundays. He acknowledged kicking Michael because he was angry. Defendant denied that he belittles the children. Finally, defendant said he loves his children and they love him. He does not believe that his work schedule would interfere with the children's needs.

After the trial, on April 13, 1987, the court rendered its decision from the bench. The court concluded that an established custodial environment existed with plaintiff only in regards to Laura. No custodial environment existed with the mother regarding the three boys. On balance, the court ruled that it was in the best interests of the boys to place them in the father's custody. The court incorporated its ruling in a May 1, 1987, order of custody from which plaintiff appeals raising three issues.

First, plaintiff alleges that the trial court failed to find an established custodial environment with her because the court misunderstood the concept of what constitutes an established custodial environment. The court believed that no custodial environment can be established if one of the par-

ents objects to that environment or does not view it as permanent. Defendant claims that the trial court's determination was not solely based on how the parents view the custodial environment, but also on how the children viewed the environment as revealed by their conduct, their attitude towards each parent, their parental preference and the permanence of the custodial relationship.

The trial court's findings in child custody cases are reviewed de novo by this Court. The reviewing court must appraise the evidence apart from the trial court's findings. *Glover v McRipley,* 159 Mich App 130, 133; 406 NW2d 246 (1987). However, relief is ultimately governed by § 8 of the Child Custody Act[1] which provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. [MCL 722.28; MSA 25.312(8).]

The first step in deciding any child custody dispute is to determine if there exists an established custodial environment. *Stringer v Vincent,* 161 Mich App 429, 434; 411 NW2d 474 (1987). The Child Custody Act requires that a court refrain from changing custody if it would change the established custodial environment, unless presented with clear and convincing evidence that such change is in the best interest of the child. MCL 722.27(1)(c); MSA 25.312(7)(1)(c).

In determining whether an established custodial environment existed, our inquiry begins with ref-

[1] MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.*

erence to MCL 722.27(1)(c); MSA 25.312(7)(1)(c), which, in pertinent part, provides:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

In *Baker v Baker,* 411 Mich 567, 579-580; 309 NW2d 532 (1981), the Michigan Supreme Court reviewed this statutory language:

> Such an environment depended instead upon a custodial relationship of a significant duration in which [the child] was provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence.

In *Baker,* a son, Arthur Lee, was born to the parties. The parties had another child who was a product of the wife's previous marriage. From the time of Arthur's birth, August, 1970, until June, 1978, the two children resided with the parents.

In June, 1978, defendant wife took the children to Colorado for a vacation. One month later she returned and told her husband she wanted a divorce. After the divorce complaint was filed, the parties agreed that defendant wife and the children would return to Colorado where they would establish a new home. Two months later, the father appeared unannounced in Colorado and took Arthur back to Michigan. Arthur remained

with the plaintiff father's parents for seven weeks prior to trial. The Supreme Court found no established custodial environment with the father since Arthur did not return to the home or the settled environment from which he was taken in June. Instead, he was living in the home of his paternal grandparents. The Court also noted that whatever community contacts and familiar associations Arthur may have had before June, 1978, were not by their very nature sufficient to preserve that environment. It dissolved and the boy entered into a new custodial relationship with his father alone, in an altered lifestyle and in a new home. The Court concluded by stating that at the time of trial there was no appreciable time during which the child looked to the father *alone* for "guidance, discipline, the necessities of life and parental comfort" in a stable, settled atmosphere. 411 Mich 581-582.

More recently, this Court has suggested that in order to determine whether an established custodial environment exists, we need to examine the circumstances surrounding the care of the children in the years immediately preceding the divorce trial. See *Schwiesow v Schwiesow,* 159 Mich App 548, 557; 406 NW2d 878 (1987). In *Schwiesow,* this Court found an established custodial environment where the children had lived all their lives on their father's farm. During the parties' five-year marriage, plaintiff mother was absent from the home for long periods of time attending college. In *Breas v Breas,* 149 Mich App 103; 385 NW2d 743 (1986), we affirmed a trial court finding that no established custodial environment existed where the mother had physical custody, pending a divorce, but where the father exercised frequent visitation, sought permanent custody and where the environment provided for the child was not

permanent. In *Curless v Curless*, 137 Mich App 673; 357 NW2d 921 (1984), we also affirmed a trial court finding of no established custodial environment where the children were staying with the mother pending a divorce, but the father frequently visited and asked for permanent custody in the divorce proceedings.

In this case, the trial court's determination that no established custodial environment existed with plaintiff as to the three boys was not error or against the great weight of the evidence. The trial court explained the concept of an established custodial environment as follows:

> Second, we would observe that under the statute a custodial environment becomes established both in fact and legally only when or at such time as the affected parents and the children view it as an established custodial environment or treat it as a custodial environment in terms of their conduct and their attitude toward each other and desire that relationship to continue.

We do not find the court's characterization of the requirements of MCL 722.27(1)(c); MSA 25.312(7)(1)(c) to have been erroneous. In order to discern whether a child naturally looks to the custodian in that environment for guidance, discipline, life's necessities and parental comfort, the court needs to consider the conduct and attitudes of the parents and children. Thus, the court applied the proper standard in determining the existence or nonexistence of an established custodial environment.

The court's decision is supported by the evidence. The boys expressed resentment over plaintiff's continued involvement with Rooks. On one occasion, one of the boys ran away to his father. Based on the evidence presented, it appears to this

Court that there was no appreciable time during which the boys looked to the mother *alone* for guidance, discipline, the necessities of life and parental comfort. Hence, we find the trial court's determination that no established custodial environment existed with plaintiff not to be against the great weight of the evidence.

Secondly, plaintiff alleges that it was error for the trial court not to determine whether the two youngest boys were of sufficient age to express a preference and whether their preference was reasonable and unbiased. We disagree.

It is well settled that, when deciding a custody matter, the trial court must evaluate each of the eleven factors contained in the Child Custody Act and state a conclusion on each, thereby determining the best interests of the children. *Arndt v Kasem,* 135 Mich App 252, 255; 353 NW2d 497 (1984).

One of the eleven factors a trial judge must consider is the "reasonable preference of the child, if the court deems the child to be of sufficient age to express preference." MCL 722.23(i); MSA 25.312(3)(i). In the within case, the trial court interviewed the children in camera. There is no record of this interview. Although the trial court did not specifically state on the record that he found Ryan and James to be of a sufficient age to express a preference and that their preference was reasonable and unbiased, the record does support the conclusion that the trial court in fact considered the boys' preferences since the court so indicated. Hence, we find no error.

Finally, on balance of the eleven factors, we find that the evidence, as a whole, supports the court's determination that it is in the best interests of the

boys to grant custody to their father and the court's decision was not against the great weight of the evidence.

Affirmed.