HELTZEL v HELTZEL

Docket No. 232736. Submitted September 11, 2001, at Grand Rapids. Decided October 23, 2001, at 9:00 A.M. Leave to appeal denied, 465 Mich 939.

Charles L. Heltzel obtained a divorce from Crystal S. Heltzel in the Cass Circuit Court, Family Division, Susan L. Dobrich, J., which granted physical custody of the parties' child to the defendant. On stipulation by the parties, the court modified the divorce judgment to temporarily transfer physical custody of the child to John and Robyn Yonkers, the child's maternal grandparents. The defendant moved for the reinstatement of physical custody of the child with her. The court denied the motion, determining that the best interest factors of MCL 722.23 weighed in favor of continuing custody with the grandparents; that because an established custodial environment had arisen during the child's placement with the grandparents, the defendant, pursuant to MCL 722.27(1)(e), had to present evidence that it was in the child's best interests to change the established custodial environment; and that the defendant had failed to do so. The defendant appealed, claiming, in part, that the trial court's custody decision contravened both MCL 722.25(1), which provides a presumption that the best interests of a child are served by awarding custody of the child to a parent, unless the contrary is established by clear and convincing evidence, and the Due Process Clause of the Fourteenth Amendment, which protects the fundamental right of a parent to make childrearing decisions.

The Court of Appeals held:

1. The trial court followed Rummelt v Anderson, 196 Mich App 491 (1992), in deciding that the existence of the presumptions in subsections 25(1) and 27(1)(c) reduces the burden of persuasion from clear and convincing evidence to a preponderance of the evidence and that the burden of persuasion rests with the parent challenging an established custodial environment in the home of a third party. In Troxel v Granville, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), the United States Supreme Court decided that a mother's fundamental right under the Due Process Clause of the Fourteenth Amendment to make decisions regarding the care, custody, and control of her child was violated where a Washington Superior Court, over the mother's objection, granted the paternal

grandparents of the child more frequent visitation of the child pursuant to a Washington statute that permitted any person to petition a superior court for visitation rights at any time and that authorized the court to grant visitation rights whenever visitation may serve the best interests of the child. Because the *Rummelt* analysis, when applied to a parent, like the defendant, who has not been shown to be an unfit parent, violates the parent's fundamental right to make childrearing decisions, it is not binding.

2. This matter must be remanded for reconsideration of the issue of custody. On remand, the trial court may infringe the defendant's fundamental constitutional right by awarding custody of the child to the grandparents only upon a showing of clear and convincing evidence by the grandparents that all relevant best interest factors of MCL 722.23, including established custodial environment, weigh in favor of maintaining the child's custody with the grandparents.

3. The defendant's claim that the grandparents lack standing to participate in this custody dispute must be rejected. Although the grandparents had no substantive right to custody of the child, they were awarded custody upon the entry of a stipulated order modifying the judgment of divorce, as allowed by MCL 552.17a(1). The trial court had jurisdiction of the custody dispute between the defendant and the grandparents pursuant to MCL 722.27(1), which provides that if a child custody dispute has arisen incidentally from another action in the circuit court or an order of judgment of the circuit court, the circuit court may take various specific actions affecting custody of the child.

4. Contrary to the defendant's claim, the trial court considered the voluntary and temporary initial nature of the defendant's placement of the child in the grandparents' custody.

Reversed and remanded for further proceedings.

PARENT AND CHILD — CHILD CUSTODY — NATURAL PARENTS — THIRD PARTIES — ESTABLISHED CUSTODIAL ENVIRONMENT.

A natural parent in a custody dispute with a third party that has custody of the parent's child in an established custodial environment enjoys a statutory presumption that the child's best interests are served by awarding custody of the child to the parent, and the third-party custodian enjoys a statutory presumption that the child's best interests are served by continuing the established custodial environment; however, the parent has a fundamental right under the Due Process Clause of the Fourteenth Amendment to make childrearing decisions; therefore, to properly recognize the fundamental right of the parent and still maintain the focus on the child's best interests, custody of the child should be awarded to the third-party custodian only when the third-party custodian proves by

clear and convincing evidence that all relevant best interest factors, taken together, weigh in favor of continued placement of the child with the third-party custodian (US Const, Am XIV; MCL 722.23, 722.25[1], 722.27[1][c]).

*Lois Jewell* and *John H. Vetne*, for Crystal S. Heltzel.

*Westrate & Holmstrom, P.C.* (by *Roosevelt Thomas*), for the appellee.

Amici Curiae:

*Judith Fox*, for Notre Dame Legal Aid Clinic.

*Karen S. Sendelbach*, for Family Law Section, State Bar of Michigan.

*Ann L. Routt*, for Domestic Violence Project, Inc./SAFE House.

Before: GRIFFIN, P.J., and GAGE and METER, JJ.

GAGE, J. In this child custody dispute, defendant appeals as of right a trial court order awarding John and Robin Yonkers physical custody of the minor child and granting defendant and the Yonkerses joint legal custody of the minor. The trial court concluded that defendant, the biological mother of the minor, failed to make the showing necessary to overcome the statutory presumption favoring the minor's continued placement in the established custody of the Yonkerses, who are defendant's parents and the minor's maternal grandparents. We reverse and remand.

I

Plaintiff and defendant married on July 1, 1995, and resided in Cass County. On May 2, 1996, defendant

gave birth to a daughter, the minor involved in this case. The marriage did not endure, however. By the time plaintiff filed for divorce on April 30, 1997, defendant had left the marital home and moved with the child to the grandparents' Elkhart, Indiana, home. Defendant's mother cared for the child while defendant worked full time. Both plaintiff and defendant sought physical custody of the child.

On August 29, 1997, the trial court entered a stipulated order for the child's temporary custody and support. With respect to custody, the order provided that the parties would share legal custody of the child, but that defendant "shall have temporary physical custody of the minor . . . until they [sic] reach the age of eighteen years, or graduates from high school, whichever occurs last." Plaintiff would enjoy "reasonable and liberal" parenting time and had to make $60 weekly child support payments.[1]

A divorce judgment, dated November 21, 1997, was entered on December 1, 1997. The judgment incorporated the custody, parenting time, and child support provisions contained in the August 29 order.[2]

On November 26, 1997, pursuant to the parties' stipulation, the trial court entered an order modifying the divorce judgment.[3] Relevant to this appeal, the

---

[1] The order also divided the parties' property, granting plaintiff the exclusive right to reside in the marital home and permitting defendant to "remove all of her and the minor child's belongings from the marital home."

[2] With respect to property, the divorce judgment likewise incorporated the provision of the August 29 order granting plaintiff the exclusive right to inhabit the marital home. The judgment also ordered that, except for several specific awards of personal property, "each party is to receive the property in their own possession."

[3] While it appears that the court erred to the extent that it "blindly accept[ed] the stipulation of the parents" without "independently determin[ing] what is in the best interests of the child," *Phillips v Jordan,*

November 26 order stated as follows regarding the child's physical custody:

> Physical custody of the minor child shall be with the maternal grandparents, JOHN AND ROBYN [sic] YONKERS, who [sic] the minor child, along with the Defendant, have been residing with since the commencement of this action. Mr. and Mrs. Yonkers shall retain physical custody of the minor child until such time as both Defendant and Mr. and Mrs. Yonkers have notified the Cass County Friend of the Court, in writing, that Defendant is prepared to assume the physical custody of the minor child. Upon receipt of said notice by the Cass County Friend of the Court, physical custody of the minor child shall revert back to Defendant and said child will remain with Defendant until she reaches the age of eighteen (18) years or graduates from high school, whichever occurs last, or until further order of this Court.

The November 26 order granted plaintiff and defendant "reasonable and liberal" parenting time.[4] Plaintiff and defendant and their attorneys signed the modification order, but the grandparents did not, and the order did not denote the grandparents as parties to the action. The grandparents never formally moved to intervene in the action.

On February 28, 2000, defendant moved for entry of an order that the grandparents show cause why they had thwarted defendant's reasonable visitation with the child. The motion asserted that defendant's mother permitted defendant only supervised visitations. On March 2, 2000, defendant filed a "petition to reinstate original divorce judgment dated 21 Novem-

---

241 Mich App 17, 21; 614 NW2d 183 (2000), the parties do not argue that the court's action constituted error requiring reversal.

[4] The modification order further stated "that the parties, including JOHN AND ROBIN YONKERS, must promptly notify the Cass County Friend of the Court in writing, when their address changes."

ber 1997," thus attempting to eliminate the November 26, 1997, modification order's grant of the child's temporary physical custody to the grandparents. In an affidavit accompanying her petition, defendant stated that she had signed the stipulated order modifying the divorce judgment "[a]t my mother's insistence . . . so that [the child] would be covered under my parents' insurance policy," and that "[m]y mother made the arrangements directly with my attorney." According to defendant's affidavit, the grandparents never allowed defendant, who had remarried and had another child, an unsupervised visit with the child. Defendant averred that she loved her child and felt prepared to assume the child's physical custody, but that the grandparents refused to permit the child's removal from their custody.

On March 10, 2000, the grandparents responded to defendant's petition. The grandparents asserted that for over two years the child had resided with them in an established custodial environment and that the child's best interests were served by her current placement. The grandparents' response also mentioned that defendant had not visited overnight with the child since September 1997 and that "the present husband of the Defendant . . . is a known child molester." The grandparents also accused two sons of plaintiff's girlfriend of molesting the child while the child visited plaintiff.[5] The grandparents suggested that the trial court order psychological evaluations of

---

[5] At the July 2000 custody hearing, the grandmother testified that in February 2000 she took the child to the hospital after she had visited plaintiff's home. Those who examined the child found that her vagina appeared red. Apparently an investigation into the charges was ongoing at the time of the custody hearing, and the child was participating in counseling.

plaintiff and defendant and their current significant others, as well as the grandparents themselves; otherwise investigate the current circumstances relevant to the issue of the child's custody; and restrict plaintiff and defendant to supervised visitations with the child.

On March 23, 2000, pursuant to plaintiff's and defendant's stipulation, the trial court ordered the restoration of the child's physical custody with defendant, that plaintiff and defendant share legal custody of the child, and that plaintiff have liberal, reasonable visitation with the child. On the same day, the trial court entered an "Order reinstating original divorce judgment dated 21 November 1997."

Shortly thereafter, however, on April 3, 2000, the trial court ordered that the friend of the court perform a custody investigation and make a recommendation, that a hearing regarding custody and visitation be scheduled, and that pending the investigation plaintiff and defendant have only supervised visitation with the child.[6] Pursuant to stipulation by plaintiff, defendant, and the grandparents, the trial court on April 26, 2000, ordered that plaintiff and defendant could visit the child on one day every other weekend, but that the child have no contact with either plaintiff's girlfriend's children or defendant's husband.[7]

At the July 26, 2000, hearing before a referee, defendant testified that during her divorce proceedings from plaintiff she and the child moved in with the grandparents, intending to remain there only until defendant located alternate suitable housing. By

---

[6] It appears that the court properly rethought its entry of the March 23 order, concluding that it needed to determine itself whether a custody modification served the child's best interests. *Phillips, supra.*

[7] As a further condition of plaintiff's visits with the minor, plaintiff's mother had to supervise them.

approximately August or September 1997, defendant's relationship with Oscar Tapia, her current husband, had become serious. Defendant obtained employment in Plymouth, Indiana, where Tapia lived, and moved in with Tapia at his parents' home. Defendant explained that although she had prepared to bring the child to her new residence for a weekend visitation, the grandparents suggested that the child should remain with them because defendant had just begun her relationship with Tapia and the child should not so soon be placed in another new environment. Defendant agreed to leave the child with the grandparents.

Defendant indicated that she subsequently acceded to the grandparents' repeated suggestions that she sign the stipulation entered on November 26, 1997, granting the grandparents temporary physical custody of the child, to make the child eligible for the grandfather's medical insurance coverage. According to defendant, the grandparents and her divorce attorney, whom the grandparents had retained for defendant, prepared the stipulation.

Defendant estimated that within the next two to three months, she had obtained insurance through her employer and informed the grandparents that she felt prepared to assume physical custody of the child. The grandparents informed defendant, however, that they would not permit her to have custody of the child because the grandmother had spoken with Tapia's former spouse regarding allegations of child sexual abuse against Tapia, and the grandparents viewed Tapia as a child molester. Documentation from an Indiana court reflected that Tapia had been charged with two counts of child molestation and one count of battery involving a child of his former wife.

Pursuant to a plea bargain, Tapia had pleaded guilty of battery, and the child molestation charges were dismissed. Tapia denied that he had ever engaged in sexual contact with a child, but admitted that he had spanked his former wife's unruly daughter, in the former wife's presence and as the former wife herself had done. Tapia averred that his former wife fabricated the molestation charges during their divorce proceedings and explained that on his counsel's advice he opted to avoid a trial on the charges because he already owed his attorney approximately $7,000 and had no money with which to go to trial. Tapia opined that to some extent the grandparents' disapproval of him was race related, but indicated his understanding of the grandparents' concern owing to the molestation allegations. Other than the court documentation of the charges against him, the record contained no specific evidence of any sexual abuse by Tapia.

Because of their concerns regarding Tapia, the grandparents, contrary to the court order providing for liberal and reasonable parenting time, advised defendant that she could visit the child only in the grandparents' home and under their supervision. The next court order addressing visitation, filed April 26, 2000, stated that defendant would have visitation from 9:00 A.M. until 7:00 P.M. every other Sunday, but that the child could have no contact with Tapia. Although the April 26 order contained no further restrictions, the grandparents acknowledged that beginning in May 2000 they nonetheless refused to permit defendant to visit the child outside their home because they suspected that defendant had allowed Tapia to have contact with the child and they were informed that a warrant existed for defendant's arrest

and did not want the child in defendant's presence outside their home because they feared that the child might witness defendant's arrest.[8] For the same reasons, the grandparents subsequently advised defendant when she arrived for a scheduled 9:00 A.M. visitation to leave and return at approximately 1:00 P.M., after the grandparents and the child would have returned from church.

Although the grandparents criticized defendant's visitation with the minor as inconsistent, the record does not specifically reflect more than a few missed appointments. Defendant testified that during the first year the child resided with the grandparents she visited the child on at least three occasions each month at the grandparents' home, that during the second year she visited the child at least two to three times each month,[9] and that during the third year she had missed only three Sunday visits since March 2000. Defendant and the grandparents agreed that one visit did not occur because defendant encountered vehicle problems, another failed to happen because Jaylund, defendant's son with Tapia, had been hospitalized, and another was missed when defendant took Tapia's parents on a trip to a Texas church. The fourth time no visit happened had occurred when defendant arrived timely at 9:00 A.M., but the grandfather suggested that defendant leave and return at 1:00 P.M.,

---

[8] Defendant explained that the warrant for her arrest stemmed from an unpaid vehicle loan that she and plaintiff had taken to purchase a vehicle, which plaintiff received pursuant to the judgment of divorce. Defendant testified that she was arrested because of the warrant, but that the charges subsequently were dismissed.

[9] Although the testimony varied concerning the extent to which the grandparents permitted defendant to visit with the child outside the grandparents' home, undisputed testimony reflected that on at least one occasion defendant was permitted to take the child to a shopping mall.

when the grandparents and the child would have returned home from church.

Defendant proclaimed that, although she had not provided the grandparents money or clothes for the child while the child resided with the grandparents, she loved the child and her parents and wanted to provide the child a home.[10] Tapia and two friends of defendant all characterized defendant as a loving mother. The grandparents denied witnessing defendant engage in any abusive or neglectful treatment of the child, and none of the other witnesses had reason to believe that defendant lacked the ability to provide the child proper care. The grandparents explained, however, that they did not wish to place the child in defendant's care because of the following concerns: defendant's irregular visitation; defendant had not maintained a stable lifestyle, as reflected by the facts that defendant moved several times since her divorce and did not maintain steady employment; and defendant's relationship with Tapia, which the grandparents viewed as their primary source of concern. The grandparents hoped the court would award them permanent physical custody of the child.

A psychotherapist testified concerning her investigation of the parties and recommendation regarding the child's custody. The therapist interviewed defendant, the child, and the grandparents. The therapist did not, however, speak with Tapia, his former spouse, or the alleged victim. Although the therapist uncovered no indication that defendant ever harmed

---

[10] Defendant's and the grandparents' testimony also diverged with respect to the frequency with which defendant requested custody of the child. Defendant alleged that she inquired monthly whether the grandparents would return the child to defendant's custody.

or threatened to harm the child, she recommended that the child remain in her established custodial environment with the grandparents in light of the charges against Tapia, defendant's frequent relocations, defendant's inconsistent visitation, and unspecified "additional concerns that were initiated through an interview with the minor child."

On August 11, 2000, the referee issued his report and recommendation. The referee initially noted that because defendant challenged the propriety of the child's custody in her established custodial environment with the grandparents, defendant had the burden of proving by a preponderance of the evidence that a change of custody would serve the child's best interests. After reviewing the statutory factors, the referee recommended that custody of the child remain with the grandparents and that defendant have the right to reasonable parenting time.[11] The referee noted that he did not believe that Tapia posed a threat to the child.

---

[11] In applying the statutory factors to determine the child's best interests, MCL 722.23, the referee found that stronger love and emotional ties existed between the grandparents and the child than between defendant and the child, subsection a; because defendant "has made some bad decisions in her life and still shows a level of immaturity" the grandparents prevailed with respect to capacity to provide the child love and guidance, subsection b; the grandparents showed greater capacity to provide for the child's basic needs because defendant had only part-time employment, subsection c; the child had resided in a stable and satisfactory environment with the grandparents for most of her life, subsection d. The referee found that defendant prevailed regarding willingness and ability to facilitate and encourage a close and continuing relationship, subsection j, because while the grandparents' concerns regarding Tapia "to a certain extent were justified . . . there is no reason why there should not be parenting time . . . with [defendant] under normal situations." The referee found that the remaining statutory factors either did not apply or that neither party prevailed with regard to these factors. The referee concluded that defendant "has failed to meet the burden of persuasion that a change in custody would be in the best interests of the child."

Pursuant to MCR 3.215(E)(3), defendant filed objections to the referee's recommendation. Defendant argued that the referee incorrectly, and in violation of her constitutional due process rights, placed on her the burden of proving that she should have custody of her child. Defendant sought a circuit court review hearing de novo, which occurred on October 25, 2000, although no transcript appears in the record. Plaintiff, defendant, and the grandparents stipulated that a transcript of the July 26, 2000, hearing before the referee would constitute the evidentiary record and were permitted to file briefs stating their positions. Plaintiff agreed with defendant that she should have physical custody of their child. In addition to raising their constitutional argument, plaintiff and defendant claimed that absent any indication of defendant's parental unfitness the referee should have placed significant weight in both their original intent that the child remain with the grandparents temporarily and their desire as the child's parents that she return to defendant's custody. Plaintiff and defendant also challenged the grandparents' standing to claim custody. The grandparents countered that the referee's recommendation served the child's best interests.

On December 29, 2000, the trial court issued its opinion. The court agreed with the referee that because an established custodial environment existed with the grandparents, defendant had to prove by a preponderance of evidence that the child's placement with her was in the child's best interests. The court further agreed with the referee that the grandparents prevailed with regard to best interests elements a, b, c, and d, and that neither the grandparents nor defendant prevailed with respect to elements e, f, g, i, and

k. Unlike the referee, the court opined that element h, the child's home, school, and community record, favored neither party because the child had not entered school. The court also disagreed with the referee that element j, willingness of the parties to facilitate a continuing relationship with the child, favored defendant, instead finding that no one prevailed because the grandparents justifiably restricted defendant's visitation with the child when they discovered the child molestation charges against Tapia. While the referee had noted no other relevant factors pursuant to element l, the court noted several weighing against defendant: defendant's "sporadic history of visitation . . . indicat[ing] a lack of . . . emotional commitment on the part of the mother"; the grandmother's hearing testimony that in December 1999 defendant left Tapia and Jaylund reflected some instability in defendant's marriage; and that defendant "allowed her parents to handle the responsibility of support." The court concluded that defendant failed to satisfy her burden of proof that the child should be removed from the grandparents' custody. On January 29, 2001, the court entered an order denying defendant's motion for change of custody and providing defendant reasonable visitation as long as Tapia had no contact with the child.[12]

II

Defendant first contends that the trial court's placement on her of the burden of proving that a change of the child's custody would serve the child's best inter-

___

[12] The referee denied defendant's subsequent motion to permit visitation in Tapia's presence.

ests infringed on defendant's fundamental liberty interest in raising her child. When faced with a legal challenge to a trial court's decision regarding a child custody dispute, we must determine whether the trial court committed "clear legal error on a major issue." MCL 722.28. Although the trial court did not address the constitutional issue, we nonetheless consider defendant's argument because it was raised below and involves a significant constitutional issue for which all necessary facts are before this Court. *In re PAP*, 247 Mich App 148; 640 NW2d 880 (2001).

A

The trial court required that defendant show that a change in custody would be in the child's best interests, citing *Rummelt v Anderson*, 196 Mich App 491; 493 NW2d 434 (1992). In *Rummelt*, the petitioner sought custody of his daughter, who was being raised by the respondent, a maternal aunt. *Id.* at 493. This Court affirmed the trial court's order that the child remain in the maternal aunt's custody. After finding that the trial court correctly determined that the aunt had provided the child an established custodial environment, *id.* at 495-496, this Court considered the father's claim that the trial court erroneously required that he prove that the child's removal from the established custodial environment served the child's best interests. This Court observed that prior panels of the Court had reached different results in cases involving noncustodial parents who sought to obtain custody of their children from established custodial environments with third parties. The Court noted that one line of cases decided that the presumption favoring

the child's natural parent, MCL 722.25(1),[13] weighed more heavily than the established custodial environment presumption favoring the third party, MCL 722.27(1)(c),[14] and therefore required that the third party bore the burden of rebutting by clear and convincing evidence the statutory presumption favoring the child's natural parents. *Rummelt, supra* at 496. This Court in *Rummelt*, however, declined to follow this line of cases, instead opting to endorse a different resolution to the apparent tension between subsections 5(1) and 7(1)(c). The Court explained that "[f]or the reasons stated []in" *Glover v McRipley*, 159 Mich App 130, 144-148; 406 NW2d 246 (1987), "the existence of the two presumptions reduces the burden of persuasion from clear and convincing to a pre-

---

[13] The statutory parental presumption states as follows:

If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence. [MCL 722.25(1).]

[14] The relevant statutory language concerning an established custodial environment states as follows:

(1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

           *     *     *

(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. [MCL 722.27(1)(c).]

ponderance of the evidence, and that the burden of persuasion rests with the parent challenging an established custodial environment in the home of a third party." *Rummelt, supra* at 496.

This Court in *Glover* had reasoned that the clear and convincing evidence standards within subsections 5(1) and 7(1)(c) could not literally apply against each other because "[s]uch a conclusion would only lead trial courts into a logical paradox." *Glover, supra* at 146. The Court therefore believed that "it is obvious that each party bears the burden of proof vis-a-vis his own presumption" by a preponderance of the evidence. *Id.* at 147. The Court opined, however, that the ultimate burden of persuasion rested with the parent challenging an established custodial environment with a third party because "placing the burden of persuasion on the parent . . . is better calculated to elicit the quality of testimony and evidence required by a trial court in its determination of the best interest of the child," and because "as indicated by the expert testimony in this and other cases, the importance of residence with a biological parent pales beside the importance of stability and continuity in the life of a child." *Id.* at 147. The Court qualified that the trial court remained free to accord the parental relationship more weight if the court found "more than a mere biological relationship." *Id.* This Court has continued to apply the *Rummelt* panel's solution, premised on the *Glover* panel's logic, to cases involving noncustodial natural parents seeking custody from a third party who has provided an established custodial environment. See *LaFleche v Ybarra*, 242 Mich App 692, 696-698; 619 NW2d 738 (2000).

B

The United States Supreme Court recently decided a visitation dispute between a child's natural mother and the paternal grandparents that we find significantly diminishes the prevailing line of Michigan cases resolving custody disputes between noncustodial natural parents and third parties who have provided established custodial environments. In *Troxel v Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), the petitioners, paternal grandparents, sought to obtain more frequent visitation with the involved child than the respondent, the child's mother, wished to offer the grandparents. *Id.* at 60-61 (opinion by O'Connor, J.). The Washington Superior Court that initially entertained the grandparents' request concluded that, pursuant to the governing Washington statute permitting " '[a]ny person' to petition a superior court for visitation rights 'at any time,' and authoriz[ing] that court to grant such visitation rights whenever 'visitation may serve the best interest of the child,' " *id.* at 60, the grandparents' visitation with the child at least one weekend a month served the child's best interests. *Id.* at 61-62. When the case progressed to the Washington Supreme Court, that court declared the visitation statute at issue unconstitutional because it permitted the state to infringe the parents' right to raise their children without any threshold showing of harm and permitted judicial overriding of parental decisions regarding visitation merely on a court's finding that a different decision better would serve the child's best interests. *Id.* at 63.

The United States Supreme Court affirmed the Washington Supreme Court's reversal of the trial court's order granting the grandparents visitation that

exceeded what the child's mother had offered. The Supreme Court initially stated that "[i]n light of [its] extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66 (opinion by O'Connor, J.). The Court characterized the Washington visitation statute as "breathtakingly broad" in that it gave a parent's decision regarding appropriate visitation for his child no deference, instead permitting "a court [to] disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Id.* at 67. The Court concluded that the Washington visitation statute, as applied in that case, violated the mother's fundamental right to make decisions regarding her child's upbringing, explaining as follows:

> First, the [grandparents] did not allege, and no court has found, that [the mother] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children. As this Court explained in *Parham* [ *v J R*, 442 US 584; 99 S Ct 2493; 61 L Ed 2d 101 (1979)]:
>
> "[O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations. . . . The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their

children." 442 US at 602; 99 S Ct 2493 (alteration in original)
(internal quotation marks and citations omitted).

Accordingly, so long as a parent adequately cares for his
or her children (i.e., is fit), there will normally be no reason
for the State to inject itself into the private realm of the
family to further question the ability of that parent to make
the best decisions concerning the rearing of that parent's
children. . . .

The problem here is not that the Washington Superior
Court intervened, but that when it did so, it gave no special
weight at all to [the mother's] determination of her daugh-
ters' best interests. . . .

The judge's comments suggest that he presumed the
grandparents' request should be granted unless the children
would be "impact[ed] adversely." In effect, the judge placed
on [the mother], the fit custodial parent, the burden of *dis-
proving* that visitation would be in the best interest of her
daughters. . . .

The decisional framework employed by the Superior
Court directly contravened the traditional presumption that
a fit parent will act in the best interest of his or her child
. . . . In that respect, the court's presumption failed to pro-
vide any protection for [the mother's] fundamental constitu-
tional right to make decisions concerning the rearing of her
own daughters. . . . In an ideal world, parents might always
seek to cultivate the bonds between grandparents and their
grandchildren. Needless to say, however, our world is far
from perfect, and in it the decision whether such an
intergenerational relationship would be beneficial in any
specific case is for the parent to make in the first instance.
And, if a fit parent's decision of the kind at issue here
becomes subject to judicial review, the court must accord
at least some special weight to the parent's own determina-
tion. [*Troxel, supra* at 68-70 (opinion by O'Connor, J.)
(emphasis in original).]

Accordingly, because the trial court announced few
findings supporting its decision, presumed that the
grandparents' visitation would serve the child's best
interests, and accorded little weight to the fact that

before the suit the mother voluntarily provided the grandparents meaningful visitation with the child, the Supreme Court held that the trial court's order improperly infringed the mother's fundamental due process right as a parent to make childrearing decisions. *Id.* at 72-73.[15]

C

In light of the recent Supreme Court decision emphasizing the fundamental constitutional right of parents to raise their children and make decisions regarding visitation, and necessarily custody, we find the instant trial court's determination of the child's custody, premised on *Rummelt, supra,* constitutionally infirm. Even though the trial court did not view defendant as an abusive or neglectful parent or a threat to the child, the court nonetheless in its analysis failed to accord defendant's fundamental interest in raising the child any special weight. According to the *Rummelt* panel's analysis of the interplay between the natural parent presumption, subsection 5(1), and the established custodial environment factor, subsec-

---

[15] Four justices joined the lead opinion in *Troxel,* while two more justices concurred. Concurring Justice Souter agreed that a parent possessed a fundamental right to raise his children, but opined that "because the state statute authorizes any person at any time to request (and a judge to award) visitation rights, subject only to the State's particular best-interests standard, the statute sweeps too broadly and is unconstitutional on its face," and "there is no need to decide whether harm is required or to consider the precise scope of the parent's right or its necessary protections." *Id.* at 76, 77. Justice Thomas also concurred, agreeing "with the plurality that this Court's recognition of a fundamental right of parents to direct the upbringing of their children resolves this case." *Id.* at 80. Justice Thomas expressed his opinion that strict scrutiny review applied to the state's interference with this fundamental right, and that in this case the state "lacks even a legitimate governmental interest—to say nothing of a compelling one—in second-guessing a fit parent's decision regarding visitation with third parties." *Id.*

tion 7(1)(c), and as the Supreme Court in *Troxel* found constitutionally offensive, *id.* at 68-70, the trial court placed on defendant the ultimate burden of persuading the court that the child belonged in the custody of her natural mother. Furthermore, the trial court's application of the simple preponderance of the evidence standard set forth in *Rummelt* for reaching a decision regarding the child's best interests plainly and unconstitutionally invited the court to enforce its own judicial opinion regarding what custody situation best would serve the child's interests, irrespective of the natural mother's wishes. The Supreme Court in *Troxel* explicitly found unacceptable such enabling of a court, in a case involving "nothing more than a simple disagreement between the . . . Court and [the parent] concerning [t]he[] children's best interests," to "make childrearing decisions simply because [the] state judge believes a 'better' decision could be made." *Troxel, supra* at 72, 73.

"[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Troxel, supra* at 70. We reject the *Rummelt* solution in this case because that Court's analysis of the interplay between subsections 5(1) and 7(1)(c) accords the fit parent's custody determination absolutely no deference whatsoever. To the contrary, the *Rummelt* solution unconstitutionally places on the natural parent the ultimate burden of persuasion that an award of custody to the parent would serve the child's best interests. *Rummelt, LaFleche,* and *Glover,* the case on which the *Rummelt* Court premised its analysis, did not acknowledge or address any constitutional implications when applying both subsection 5(1) and 7(1)(c). Because *Rum-*

*melt* did not consider the United States Supreme Court's recent reminder of the importance of the fundamental parental liberty interest, we note that we are not bound to follow *Rummelt*. MCR 7.215(I)(1).[16]

We therefore conclude that in this case involving a fit natural mother seeking a change of her child's custody from an established custodial environment with third persons, the trial court's application of the test set forth in *Rummelt*, for resolving cases involving tension between the natural parent and established custodial environment presumptions, constituted clear legal error because it violated defendant's fundamental liberty interest in raising her children. *Troxel, supra* at 72-73. In light of the fact that the evidence presented at the hearing did not weigh strongly against an award of custody to defendant, the trial court's unconstitutional application of an incorrect burden of proof cannot be considered harmless. Consequently, we must remand this case for the trial

---

[16] While this Court has long recognized a parent's fundamental constitutional liberty interest in childrearing, *Terry v Affum*, 233 Mich App 498, 504; 592 NW2d 791 (1999), aff'd in part and vacated in part on other grounds 460 Mich 856 (1999); *In re LaFlure*, 48 Mich App 377, 385; 210 NW2d 482 (1973), the constitutional issue was not addressed in *Rummelt, supra*. We note that our Supreme Court recently has directed a trial court to reconsider *Rummelt* in light of *Troxel*:

In lieu of granting leave to appeal, the June 24, 1999 order of the Macomb Circuit Court is vacated, and the case is remanded to the Macomb Circuit Court for a hearing *by the circuit judge* on the defendant's petition for custody of her child. . . . In deciding whether to grant the petition, the circuit court is to address the interplay of the presumptions stated in MCL 722.27(1)(c) . . . and MCL 722.25(1) . . . and whether the construction supplied in *LaFleche v Ybarra*, 242 Mich App 692 (2000), *Rummelt v Anderson*, 196 Mich App 491, 496 (1992), and *Straub v Straub*, 209 Mich App 77, 79-80 (1995), gives to fit parents the degree of deference required by the U.S. Constitution. See *Troxel v Granville*, 530 US 57 (2000). [*Zulkowski v Zulkowski*, 463 Mich 933 (2000) (emphasis in original).]

court's reconsideration. The trial court on remand must give defendant's fundamental liberty interest in childrearing appropriate consideration and should consider up-to-date information. *Fletcher v Fletcher*, 447 Mich 871, 889 (BRICKLEY, J.), 900 (GRIFFIN, J.); 526 NW2d 889 (1994).

D

Because we must reverse the trial court's unconstitutional custody determination, we also must provide some guidance for the court on remand when attempting to reapply subsections 5(1) and 7(1)(c). We note that several panels of this Court, although not speaking in constitutional terms, addressed the concurrent application of subsections 5(1) and 7(1)(c) in a manner that we find more properly deferential to the fundamental nature of the parent's interest in childrearing when determining whether to grant the natural parent custody, thus changing the child's established custodial environment with a third party.

This Court has struggled with the interaction between these two presumptions on many occasions, most recently in *Glover v McRipley*, 159 Mich App 130; 406 NW2d 246 (1987). But see also *Deel v Deel* [113 Mich App 556; 317 NW2d 685 (1982)]; *Stevens v Stevens*, 86 Mich App 258; 273 NW2d 490 (1978); *Siwik v Siwik*, 89 Mich App 603; 280 NW2d 610 (1979); *Bahr v Bahr*, 60 Mich App 354; 230 NW2d 430 (1975). Having examined these cases, we agree with the *Deel* panel's recognition that the two presumptions are not to be considered equally.

"[T]he language used in the statutes suggest[s] that the presumptions are not, in fact, of equal weight. While the established custodial environment is to be favored unless there is clear and convincing evidence that a change is in the best interests of the child, it is presumed that the best

interests of the child are served by granting custody to the natural parent." [*Deel, supra,* p 561.]

We also agree with the following language cited favorably in both *Deel* and *Bahr, supra:*

"*[The presumption that the best interests of the child would be served by granting custody to the natural parent] remains a presumption of the strongest order and it must be seriously considered and heavily weighted in favor of the parent. Nevertheless, if the 'clear and convincing' evidence establishes that the best interest of the child is served by awarding custody to the third party, the presumption is rebutted.*" [*Deel, supra,* pp 561-562.]

\*     \*     \*

*While it is true that in any child custody dispute the overriding concern is for the best interests of the child, it is also presumed that the best interests of a child are served by placing custody with the natural parent, unless otherwise shown by clear and convincing evidence.* MCL 722.25 . . . . We agree that a showing that a parent is unfit is not required to overcome this presumption. *Stevens v Stevens, supra,* and *Bahr v Bahr, supra.* Nonetheless, we construe the "clear and convincing evidence" standard to be a substantive standard rather than just an evidentiary standard. . . . *Consequently, in order to overcome the natural parent presumption, the trial judge was required to find that, when all of the factors in MCL 722.23 . . . were collectively considered, defendant [the third party providing an established custodial environment] clearly and convincingly established that the best interests of the children required maintaining custody with defendant. It is not sufficient that defendant may have established by clear and convincing evidence that a marginal, though distinct, benefit would be gained if the children were maintained with him.* [*Henrikson v Gable,* 162 Mich App 248, 252-253; 412 NW2d 702 (1987) (emphasis added).]

See also *Deel, supra* at 562 (explaining that "[r]ecognition of both presumptions does not . . . remove the third party's burden to show that custody

in his or her favor is in the child's best interests"); *Stevens, supra* at 267 ("The presumption in favor of the natural parent is rebutted if clear and convincing evidence establishes that the best interests of the child are served by awarding custody to the third party."); *Bahr, supra* at 359 (recognizing that the Child Custody Act required that the natural parent presumption "must be seriously considered and heavily weighted in favor of the parent," but that the presumption is rebutted "if the 'clear and convincing evidence' establishes that the best interest of the child is served by awarding custody to the third party").

We agree with the foregoing analysis of the appropriate interplay between subsections 5(1) and 7(1)(c). In enacting the Child Custody Act, the Legislature plainly recognized the fundamental constitutional nature of a parent's interest in childrearing when it enacted the presumption that in all custody disputes involving natural parents and third persons, absent clear and convincing evidence to the contrary, parental custody served the child's best interests. Subsection 5(1). The Legislature also clearly recognized the importance of an established custodial environment to the development of children. Subsection 7(1)(c). We do not believe, however, that the Legislature intended that in every custody dispute between a noncustodial natural parent and a third-person custodian, the third-person custodian could eliminate the fundamental constitutional presumption favoring custody with the natural parent, and thus arrive on equal footing with the parent with respect to their claim of custody to the parent's child, merely by showing that the child had an established custodial environment in the third person's custody. This interpretation, employed in *Rummelt*, fails to take into proper

account the parents' fundamental due process liberty interest in childrearing.

The Legislature has decreed that in any custodial dispute the child's best interests, described within MCL 722.23, must prevail. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). In every custody dispute involving the natural parent of a child and a third-person custodian, the strong presumption exists, however, that parental custody serves the child's best interests. We hold that, to properly recognize the fundamental constitutional nature of the parental liberty interest while at the same time maintaining the statutory focus on the decisive nature of an involved child's best interests, custody of a child should be awarded to a third-party custodian instead of the child's natural parent only when the third person proves that all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns within § 3, taken together clearly and convincingly demonstrate that the child's best interests require placement with the third person.[17] Only when such a clear and convincing showing is made should a trial court infringe the parent's fundamental constitutional rights by awarding custody of the parent's child to a third

---

[17] The existence of an established custodial environment should be considered, subsection 7(1)(c), but should not itself eliminate the third person's burden to overcome the parental presumption by clear and convincing evidence. We note, however, that when a child custody dispute involves the child's fit natural parents, who possess equal constitutional liberty interests in raising their children, and agencies, or third persons, the simple best interests of the child analysis applies, subsection 5(1), and the party seeking a change in the child's custody from an established custodial environment must demonstrate clearly and convincingly that the change will serve the child's best interests. Subsection 7(1)(c).

person.[18] We reiterate the Supreme Court's warning that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made," *Troxel, supra* at 72-73, and remind trial courts considering competing custody claims of a noncustodial natural parent and a third-person custodian that it is not sufficient that the third person may have established by clear and convincing evidence that a marginal, though distinct, benefit would be gained if the children were maintained with him. *Henrikson, supra* at 253.

III

Defendant also argues that the grandparents lacked standing to participate in a custody dispute over the minor. Whether a party has legal standing to assert a claim constitutes a question of law that we review de novo. *Terry v Affum*, 233 Mich App 498, 501; 592 NW2d 791 (1999) (hereinafter *Terry I*), aff'd in part and vacated in part on other grounds 460 Mich 856 (1999).

We initially note that defendant correctly cites *Bowie v Arder*, 441 Mich 23, 48-49; 490 NW2d 568 (1992), for the proposition that a third party, including a grandparent, generally "cannot create a custody dispute by simply filing a complaint in circuit court alleging that giving legal custody to the third party is

---

[18] We note for clarification that the provisions of the Child Custody Act clearly are not themselves facially unconstitutional, *Council of Organizations & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997), but that the trial court's application of subsections 5(1) and 7(1)(c) violated defendant's constitutional rights.

in the best interests of the child."[19] Defendant also correctly states that a third party does not attain a legal right to a child's custody merely on the basis of the fact that the child has resided with the third party. *Bowie, supra* at 45; *Sirovey v Campbell*, 223 Mich App 59, 69; 565 NW2d 857 (1997).

As defendant seems to acknowledge, however, the instant case is distinguishable from the consolidated cases the Supreme Court addressed in *Bowie, supra.* While *Bowie* involved a grandparent who initiated an original custody proceeding against the minor's father, *Bowie, supra* at 28-29, and an attempted voluntary transfer of legal custody from a child's parents to third parties outside the context of a custody dispute, *id.* at 29-30, 55, the instant custody dispute stemmed from a circuit court order during a divorce proceeding. Our Supreme Court specifically has recognized that while generally no authority permits "a nonparent to create a child custody 'dispute' by simply filing a complaint in the circuit court alleging that giving custody to the third party is in the 'best interests of the child,'" *Ruppel v Lesner*, 421 Mich 559, 566; 364 NW2d 665 (1984), "custody may be awarded to grandparents or other third parties according to the best interests of the child in an appropriate case (typically involving divorce)." *Id.* at 565. The Supreme Court in *Bowie* later explained that a circuit court award of custody to a third party during a divorce proceeding "is based not on the third party's legal

---

[19] Certain limited standing exceptions, inapplicable in this case, do exist within the Child Custody Act. See subsection 6b, MCL 722.26b, involving guardianships, and 6c(1), MCL 722.26c(1), describing limited circumstances under which third persons may bring a custody action. Section 7b, MCL 722.27b, also inapplicable here, authorizes grandparents to seek orders for grandparenting time under certain circumstances.

right to custody of the child, but on the court's determination of the child's best interests." *Bowie, supra* at 49, n 22.

The circuit court had jurisdiction of the custody dispute between defendant and the grandparents pursuant to MCL 722.27(1), which explains that "[i]f a child custody dispute . . . has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court," the circuit court may take various specific actions affecting the child's custody. Subsection 7(1) contains the threshold requirement that an existing custody dispute is properly before the circuit court. *Terry v Affum (On Remand)*, 237 Mich App 522, 533; 603 NW2d 788 (1999) (*Terry II*). "The term 'child custody dispute' is generally used broadly throughout the Child Custody Act 'to mean any action or situation involving the placement of a child.' " *Sirovey, supra* at 68, quoting *Frame v Nehls*, 452 Mich 171, 179; 550 NW2d 739 (1996). Defendant's March 2000 petition to change the child's custody from the grandparents clearly created an "action or situation involving the placement of a child." *Sirovey, supra* at 68. Once obtained pursuant to divorce proceedings, circuit court jurisdiction over child custody issues continues until the child turns eighteen years of age. MCL 552.17a(1).

The grandparents' standing is not at issue in this case, however, because the grandparents at no time during the instant litigation ever filed a pleading requesting permanent custody of the child or otherwise sought to originate a custody proceeding. *Terry II, supra* at 533. To the extent that the grandparents obtained custody of the child during the divorce proceedings, the trial court properly granted the grandparents custody pursuant to the parties' stipulated

order modifying the judgment of divorce. "[U]nder § 17(1) of the divorce act, the circuit court may enter postjudgment custody orders only 'on the petition of either of the parents.' MCL 552.17(1) . . . . In making such order, the circuit court has jurisdiction under § 17a(1) of the divorce act to award custody to a third person."[20] *Sirovey, supra* at 77. "Viewing plaintiff's and defendant's custody stipulation as analogous to a postjudgment petition to modify custody, the court . . . had jurisdiction under the divorce act to award custody of [the child] to [the grandparents] if it then determined such award to be in [the child]'s best interests." *Id.* at 83.

Accordingly, while the grandparents had no substantive right to custody of the minor, *Bowie, supra,* we find that as proper third-party custodians under the modified judgment of divorce the grandparents properly responded to defendant's request to change custody, on behalf of the child in their custody, that the child's best interests would be served by continuing to reside in the established custodial environment with the grandparents. An observation of this Court in *Terry II, supra,* relates to a similar situation that illustrates this point. In *Terry I,* a natural father obtained a court order establishing his paternity and sole legal and physical custody of his child, while also reflecting the father's and the deceased mother's family's stipulation that the mother's family would have parenting time with the child. *Terry I, supra* at 499-500. The father shortly thereafter moved to amend the court order to terminate the mother's family's right to parenting time, but the trial court denied the motion

---

[20] The Child Custody Act defines a "third person" as "any individual other than a parent." MCL 722.22(g).

and revised the mother's family's parenting time schedule. *Id.* at 500-501. This Court in *Terry I* found that the mother's family lacked standing to initiate a proceeding seeking parenting time pursuant to MCL 722.26c. *Terry I, supra* at 502. On remand from the Supreme Court, this Court in *Terry II* considered whether pursuant to MCL 722.27(1)(b) parenting time with the mother's family was appropriate on the basis that it would serve the children's best interests. *Terry II, supra* at 525-526, n 2. This Court found that *"while without standing to initiate a proceeding seeking parenting time, by virtue of [the father's] various actions [the mother's family members] are parties to a child custody dispute properly before the circuit court." Terry II, supra* at 534 (emphasis added). The Court concluded that as long as visitation with the mother's family served the children's best interests, the mother's family would be entitled to visitation incidental to the child custody dispute. *Id.* at 533-537.[21]

---

[21] See also *Terry II, supra* at 529-533, describing the following similarities between that third-person case and *Deel, supra, Siwik, supra, Stevens, supra,* and *Bahr, supra*:

Notwithstanding the fact that custody did not ultimately remain with the third parties in all these cases, at some stage of the proceedings in each case the circuit court determined that at least for that time awarding custody to third parties was in the children's best interests. Though the four decisions are not equally clear concerning how the third parties became involved, two common threads can be gleaned. Critically, none of the third parties had *initiated* the action that resulted in the circuit court's award of custody to them. This fact comports with what is clearly the threshold requirement of MCL 722.27(1) . . . that an existing custody dispute is properly before the circuit court. The second element common to the four examined cases is the fact that the circuit court's decisions regarding the award of custody were made after *hearings to determine the child's best interests.* [*Terry II, supra* at 533 (emphasis in original).]

Consequently, we reject defendant's standing argument. We further note that because we do not detect within the trial court record, nor within defendant's brief on appeal, any specific argument that the grandparents could not participate in the action because they never filed a motion to intervene in the proceedings, we need not consider this issue. *Tucker v Clare Bros Ltd*, 196 Mich App 513, 517; 493 NW2d 918 (1992).

IV

Lastly, defendant asserts that the trial court improperly failed to weigh in its analysis of the custody situation the fact that she, plaintiff, and the grandparents all contemplated that the grandparents would maintain custody of the child only temporarily until defendant found a new home and job. This Court many times has recognized the "good public policy to encourage parents to transfer custody of their children to others temporarily when they are in difficulty by returning custody when they have solved their difficulty." *Straub v Straub*, 209 Mich App 77, 81; 530 NW2d 125 (1995). Our review of the trial court's opinion reflects that the court did indeed consider the voluntary and temporary initial nature of defendant's placement of the child in the grandparents' custody.[22]

---

[22] We note that the trial court correctly observed that a finding of an established custodial environment does not depend on the manner in which such an environment became established. See *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995) ("In determining whether an established custodial environment exists, it makes no difference whether the environment was created by a court order, without a court order, in violation of a court order, or by a court order that was subsequently reversed."); *Treutle v Treutle*, 197 Mich App 690, 693; 495 NW2d 836 (1992) ("In determining whether a custodial environment exists, the court's con-

To the extent that defendant suggests that the trial court should have granted her custody solely on the basis that the child's placement with the grandparents was intended to be a temporary arrangement, we do not agree. See *Straub, supra* (applying this public policy as a factor that "here tips an otherwise equal scale" in the mother's favor).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

cern is not with the reasons behind the custodial environment, but with the existence of such an environment.").